## HALL *against* HALE.

The first indorser of a negotiable promissory note is a competent witness, without a release, in a suit by the holder against a subsequent indorser, to prove that the defendant indorsed the note merely for the accommodation of the maker, and that the maker negotiated it fraudulently.

Though the holder of a negotiable promissory note, which has been fraudulently assigned, may recover upon it against the maker or a prior indorser, if it was taken, by such holder, in the usual course of trade, and for a fair and valuable consideration, without notice of the fraud; yet if it was taken without due caution, and under circum-

stances which ought to have excited the suspicion of a prudent and *Hartford,* careful man, the maker or prior indorser may be let into his defence. June, 1831.

If the word *renewal* were written upon the margin of a note, indorsed for the accommodation of the maker, and intended solely for the renewal of another note in the bank, and that word remained upon it, when it was negotiated to the holder; or if such word had been partially erased, leaving such appearances, as would, in the ordinary course of business, excite the suspicion of a careful and prudent man; in either case, a misapplication and fraudulent transfer may be shewn as a defence

Hall
*v.*
Hale.

But the caution required of the indorsee of a note, who takes it in the course of business, is only that of ordinary prudence, and not that close examination, which it is proper a jury should make, of a paper exhibited in evidence.

Therefore, where the defence to an action by the indorsee against the indorser of a promissory note, was, that the note was indorsed for the accommodation of the maker, and was intended solely for the renewal of another note in the bank; and that the word *renewal* had been written upon the margin of the paper, and erased by a penknife, but by close examination, certain letters in that word might be partially seen; and the judge charged the jury, that if they should find, that the note was so intended and indorsed, and the word *renewal* had been written thereon, although it had been erased before it was negotiated to the plaintiff, yet if, at that time, there was any *trace* or *mark* of the word *renewal* remaining, it was sufficient to put the plaintiff upon enquiry, and he could not recover; it was held, that this direction was wrong, inasmuch as it made the scrutiny proper for the jury, the standard, by which the caution required of the plaintiff was to be determined; and a verdict having passed for the defendant, a new trial was granted.

THIS was an action brought by the plaintiff, as the indorsee, against the defendant, as the indorser of a promissory note, for 375 dollars, made by one *Stevens*, payable to *Henry Benton*, or order, ninety-five days after date.

The cause was tried, on the general issue, at *Hartford, February* term, 1831, before *Peters*, J.

The making and indorsement of the note, the transfer of it to the plaintiff before it became due, its presentment and dishonour, with due notice to the defendant, were admitted. The defendant claimed, that the note was indorsed by him, as an accommodation indorser, and that it was intended for the renewal in part of another note for 500 dollars, made by *Stevens* and indorsed by *Benton* and the defendant, which had been discounted at the *Hartford Bank;* that after the note in suit had been indorsed, by the defendant, it was delivered to *Stevens* to

be used for the renewal in part of such note for 500 dollars, and for no other purpose, and that *Stevens* did not so apply it, but fraudulently negotiated it to *Ransom Tomlinson*, by whom it was negotiated to the plaintiff. The defendant further claimed, that the note in suit was received, by the plaintiff, out of the regular and ordinary course of business, and under suspicious circumstances, and such as ought to have put him on his guard.

To prove, that the defendant was a mere accommodation indorser, and that the note had been misapplied and fraudulently negotiated, by *Stevens*, the defendant offered the deposition of *Benton*, the payee and first indorser, duly taken. It not appearing that *Benton* had been released, by the defendant, the plaintiff objected to the admission of such deposition. But the judge overruled the objection, and admitted it.

Among the suspicious circumstances attending the negotiation of the note to the plaintiff, as claimed by the defendant, one was, that the word *renewal* had been written upon the paper, near the bottom, and had been erased, by a penknife, but that by inspection and close examination, certain letters in that word might still be partially seen.

The plaintiff claimed, that the note had been received by him, in good faith, for a valuable consideration, in the regular course of business, and under no suspicious circumstances ; that the word *renewal* had never been written upon the paper ; but if it had been so written, that it had been erased, before the note was negotiated to the plaintiff ; and that he, at that time, had no knowledge or suspicion, that it had ever been written there. He insisted, therefore, that he ought not to be precluded from a recovery in this action, although the other facts claimed by the defendant, should be proved ; and requested the judge so to instruct the jury.

But the judge charged the jury, that if they should find the note in question was designed for a renewal note, and that the defendant was an accommodation indorser thereof, and that the word *renewal* had been written thereon, although it had been erased before it was negotiated to the plaintiff, yet if, at that time, there was any trace or mark of the word *renewal* remaining, it was sufficient to put the plaintiff upon enquiry, and he could not recover in this action.

The jury returned a verdict for the defendant ; and the plaintiff moved for a new trial.

*Hungerford* and *Toucey,* in support of the motion, contended,

1. That the question whether the plaintiff exercised due caution in taking the note, was a matter of *fact* to be determined by the jury. The judge should have informed the jury what degree of caution the law requires—*i. e.* whether it be a *slight* degree, or that which is *ordinarily* used by prudent men of business, or the *strictest* possible—and then should have left it to the jury to find, whether that degree of caution was exercised by the plaintiff, in this case. 3 *Kent's Comm.* 53. *Gill* v. *Cubitt,* 3 *Barn. & Cres.* 466. (10 *Serg. & Lowb.* 154.)

2. That if in given circumstances, the question of due caution is a question of *law,* the rule laid down in the charge, is an erroneous one. The charge decided, not only that the appearance of the word *renewal* on the face of the paper, was, in point of law, sufficient to excite suspicion, but that if there was *any* *trace* or *mark* of that word remaining, after the letters had been erased with a penknife, the plaintiff was precluded from a recovery. It is to be remarked here, that there was *no other* circumstance in the case than such trace or mark, tending, even remotely, to excite suspicion. This being undiscovered, there was *nothing* to awaken attention, or to call for any critical examination. Now, it is obvious, that there might have been in fact some *trace* or *mark* of the word on the paper, and yet that a prudent man, in the course of business, whose attention was not especially directed to it, would not be likely to discover it. The degree of caution required by the charge, was, then, the *strictest possible, viz.* such as is exercised by men, whose attention is awakened and directed to a specific object, aided by every means of investigation that can be had. Such caution the law does not exact of him, who, in the course of business, takes negotiable paper. *Slater* & al. v. *West,* 3 *Car. & Payne,* 325. (14 *Serg. & Lowb.* 330.) *Gill* v. *Cubitt,* 3 *Barn. & Cres.* 466. (10 *Serg. & Lowb.* 154.) 3 *Kent's Com.* 53.

*N. Smith* and *W. W. Ellsworth,* contra, remarked, That if the word *renewal* was upon the margin of the note, so that it could be seen and read, it was, unquestionably, sufficient to excite the suspicion of a prudent and careful man, and the plaintiff was by law precluded from a recovery upon it. *Woodhull* v. *Holmes,* 10 *Johns. Rep.* 231. *Holme* v. *Karsper,* 5 *Binn.* 469. 471. *Rees* v. *Marquis* of *Headfort,* 2 *Campb.* 574. *Paterson* v. *Hardacre,* 4 *Taun.* 114. *Codington* & al. v. *Bay,* 20 *Johns.*

*Rep.* 637. *Thomas* v. *Newton,* 2 *Car. & Payne* 606. (12 *Serg. & Lowb.* 285.) This principle of law was not controverted, on the trial. The only point of controversy related to the *appearance of the paper ;* one party claiming that the word *renewal,* or some part of it, was discernible upon it; the other, that it was entirely obliterated. The judge very properly commented on the evidence, and submitted the question whether it was so obliterated or not, to the jury. The verdict has now determined that question in favour of the defendant ; justice has been done ; and a new trial ought not to be granted.

Hosmer, Ch. J. It is unquestionably clear, that *Benton* has no interest in the event of the plaintiff's suit, neither directly nor remotely, and the objection to his deposition has been waived in the argument of the case. *Woodhull* v. *Holmes,* 10 *Johns. Rep.* 231.

With respect to the other ground of new trial, no extended discussion is required. The law has been fully and uniformly settled.

It is an established principle, that negotiable paper may be assigned or transferred, by an agent or any other person, fraudulently, so as to bind the true owner as against the holder, if it was taken by him in the usual course of trade, and for a fair and valuable consideration, without notice of the fraud. *Bay* v. *Coddington* & al. 5 *Johns. Chan. Rep.* 54. 56. *Miller* v. *Race,* 1 *Burr.* 452. *Grant* v. *Vaughan,* 3 *Burr.* 1516. *Peacock* v. *Rhodes, Doug.* 633. *King* v. *Milsom,* 2 *Campb.* 5. *Solomons* v. *Bank of England,* 13 *East,* 135. *in notis. Cruger* v. *Armstrong* & al. 3 *Johns. Ca.* 5. *Conroy* v. *Warren,* 3 *Johns. Ca.* 259.

It is equally well settled, that if an indorsee takes a bill without due caution, and under circumstances, which ought to have excited the suspicion of a prudent and careful man, the maker, acceptor, or prior indorser may be let into his defence. *Ayer* v. *Hutchins* & al. 4 *Mass. Rep.* 370. *Slater* & al. v. *West,* 3 *Car. & Payne* 325. (14 *Serg. & Lowb.* 330.) *Holme* v. *Karsper,* 5 *Binn.* 469. *Gill* v. *Cubitt,* 3 *Barn. & Cres.* 466. (10 *Serg. & Lowb.* 154.)

In *Wiggin* & al. v. *Bush,* 12 *Johns. Rep.* 306. 310. a note dated on the 24th of *May,* but made on the 22nd of *April,* had entered upon it a memorandum of the day, on which in fact it was executed and indorsed. The court held, that by this

indorsement of the real date, the plaintiffs, who were indorsees, had such information as ought to have led to an enquiry into the manner of obtaining it.

*Hartford,*
June, 1831.

Hall
*v.*
Hale.

It is undoubtedly clear, that if the word *renewal* had been fairly written on the note in question, and remained upon it, at its negotiation to the plaintiff; or, if it had been partially erased, leaving such appearances, as would, in the ordinary course of business, have excited the suspicions of a careful and prudent man; the defendant would be authorized to defend himself on the ground assumed by him. But it must be borne in mind, that the degree of caution and prudence, to be exercised, by a person in the usual course of trade, is the point on which the enquiry turns. The ordinary and prudent circumspection, that may well be exercised, on the reception of a note, in the usual course of business, and which is exercised by men who transact their concerns with care and caution, is demandable of the plaintiff. But, as was well remarked, by Sir *William Jones,* in his treatise on *Bailments,* (*p.* 8.) there are infinite shades of care and diligence, from the slightest momentary thought, or transient glance of attention, to the most vigilant anxiety or solicitude; and it is very obvious, that the law does not and ought not to require of the unsuspecting indorsee of a note in the common course of trade, the same caution, vigilance and careful inspection, as is exercised by a jury. This would be an entire departure from the established rule, and the nature and equity of the case. The jury have pointed out to them the mark or cause of suspicion; they hear the subject ably commented on, by counsel; they are directed in their enquiries, by the court; and thus excited to observation, they have hours unitedly to examine and deliberate. Of them may be justly demanded the utmost possible enquiry and circumspection. But the condition of a person in the usual course of trade, is altogether different; and a different rule, from the nature of the case, is justly required and prescribed.

In this case, the degree of observation and caution proper for the jury, was made the standard to test the observation by law demandable of the plaintiff. If there were *any* trace or mark of the word *renewal,* it was said to be sufficient to put the plaintiff on enquiry. All that the defendant claimed, was, that by inspection and *close* examination, certain letters of the word *renewal* were *in part* visible; and this *close* examination, to the object of which the jury were pointed, was the principle adopted for the determination of the cause.

There exists no doubt that the charge to the jury was incorrect.

I will only observe further, that if the word *renewal* had been so far visible as to put on the plaintiff the necessity of enquiry, it would not necessarily follow, that the note was fraudulently transferred.    At the same time, I admit, that if it were not explained, consistently with the right to negotiate the note, the transfer whould be invalid.

The other Judges were of the same opinion, except Bissell, J. who was absent.

New trial to be granted.