## No. 61.—SAMUEL T. BAILEY, plaintiff in error, vs. HENRY H. LUMPKIN, defendant in error.

Upon a rule to foreclose a mortgage, under the statute of Georgia, the mortgagor may show, by way of defence, that the contract upon which it was given was usurious.

The true test of the interest of a witness is, that he will either gain or lose by the *direct legal operation of* the judgment, or that *the record will be legal evidence for or against him in some other suit.*

Neither legal nor usurious interest can be recovered at law, in this State, upon a contract tainted with usury.

A security infected with usury is void in Georgia, *quoad* the legal interest, together with the usury, even in the hands of an innocent holder without notice.

The maker of a usurious note is not barred of the defence of usury, by standing by when it was transferred to an innocent holder, and not disclosing the fact of the usury.

In a case where the original transaction was usurious, and several renewals have taken place, and part of the interest reserved has been paid, the infection of usury follows all the securities given in renewal for the same debt, however varied in form and amount, and the amount paid on such renewals must be deducted from the original amount loaned.

Although the radical vice of a usurious contract attaches to, and infects all, future securities for the same loan, yet the contract may be purged : as, for example, if there is an accounting between the parties to a usurious contract, and all sums previously paid usuriously are deducted, and a new security given for the balance, the contract is said to be purged, and the last security taken is valid.

This was a rule to foreclose a mortgage on real estate, in the Superior Court of the county of Houston, at the instance of the plaintiff in error, as the assignee of Nathan H. Beal, against the defendant in error.

In compliance with the rule to foreclose, the defendant in error, who was the mortgagor, appeared in court, and disputed, upon oath, the amount claimed to be due, and denied that more than twenty-seven hundred dollars was due upon the mortgage ; alleging that the mortgage, as well as the note, to secure which it was given, except the sum of twenty-seven hundred dollars, was void for usury. The defendant in error then proceeded to file the plea of usury, setting forth circumstantially the original

transaction, and the usury exacted, and several subsequent renewals, and the usury exacted thereon, and also divers payments made by the defendant in error upon said transaction, and claiming that they should be deducted from the original amount loaned, which, if done, would leave the amount above mentioned as the balance due.

At the April Term, 1846, the said rule to foreclose, and the issue thereon made by the defendant's plea of usury and payments, as aforesaid, came on to be tried on appeal in said Superior Court, before Judge Floyd, when the plaintiff in error moved to strike out the plea or affidavit of the defendant in error, on the ground that the statutes of Georgia did not contemplate or authorize the setting up of *usury* at law against a mortgage, on his proceedings under a rule to foreclose his mortgage. Which motion was overruled by the court, and the plaintiff in error excepted.

The counsel for the plaintiff in error then introduced, and read in evidence to the special jury, the note and mortgage described in the rule *nisi*, and then closed his case.

It appeared that Nathan H. Beal, the original payee and mortgagee in said note and mortgage, had assigned the same to the plaintiff without recourse.

The counsel for the defendant in error then introduced the said Nathan H. Beal as a witness, to prove the usury and payments alleged in the plea ; to whose competency, for that purpose, the plaintiff in error objected, which was overruled by the court below, and the witness was ordered to testify. To all which the plaintiff in error excepted.

The witness, Beal, testified as to the usury, and as to the payments made upon the renewals, &c. He also testified, that before he assigned the note and mortgage to the plaintiff, that himself, with plaintiff and defendant, had an interview, in which the defendant urged both of them, witness and plaintiff, to use their best exertions with certain legatees, who were to receive the proceeds of said note and mortgage, to get indulgence for him until the next fall or Christmas, when he would pay every dollar of the same, principal and interest. That the defendant did not disclose to the plaintiff that there was any usury in said note, nor any other objection to its validity ; nor did the witness disclose to the plaintiff that the transaction on which the note and mortgage were given was tainted with usury. Shortly after this interview, on the same day, the plaintiff became possessed of the note and mortgage, by the assignment of witness, and gave to the defendant the indulgence desired by him. From aught that appeared upon the trial, the plaintiff was an innocent holder without notice. The defendant's counsel here closed their case. The plaintiff then produced a letter, addressed to him by the defendant, dated Houston, January 20th, 1844, (being the day after the note and mortgage were assigned to plaintiff,) as follows, to wit :

" Col. S. Bailey :

"*Dear Sir*—I feel a considerable anxiety to know the event of the settlement made at Perry, between Beal and Bostwicks, so far as I am interested. Will you be so good as to write me what disposition was made of my paper held by Beal, if any ? I well know I have nothing to claim from the Bostwicks, but from Beal much. I am fully apprised he has

been disposed to deal hard with me, but he should recollect, if he sues me, I can claim the advantages of the law, and most assuredly I will do so under-existing circumstances; but, if waited with till the end of the present year, I will pay every dollar of the debt. I only ask this of Beal; he should grant it me. Will you be so good as to say to me by letter if Beal or the Bostwicks control my note at this time; and, if Beal has put it out of his control, what course will be taken by those who control it. Your answer to this in full will very much oblige your friend.

" Respectfully yours,

" Answer me at Perry."                          " H. H. LUMPKIN."

And proved the said letter to be in the hand-writing of the defendant, and offered to read it in evidence upon said trial, when the counsel for the defendant objected, and the court below sustained the objection, and the letter was rejected.    To which the plaintiff in error excepted.

After argument to the jury, the court below charged, that, by the laws of Georgia, neither legal nor usurious interest could be recovered on a contract tainted with usury ; and that it made no difference whether the contract was in the hands of the payee or of an innocent transferree ; and that any payments of either legal or usurious interest made at any time on previous or prior renewals, must be deducted out of the sum originally loaned, and that the balance was all that the plaintiff was entitled to recover.  To which charge of the court below the plaintiff in error excepted.

The plaintiff in error then requested the court below to charge the jury as follows :

1st. The plaintiff, on the foreclosure of a mortgage, when the defendant sets up the plea of usury, is entitled to principal and legal interest.

2d. That where there have been renewals and payments of interest made, the note sued on being for eight per cent., defendant cannot deduct, from the note sued on, the interest paid on renewals.

3d. That the defendant, knowing that the note was about to be transferred by said Beal,.and not notifying the plaintiff that there was any usury to be plead against the note, but representing to the plaintiff that it would be fully paid, he could not set up usury against the plaintiff.

Which the court below refused, but charged the jury that the contrary thereof was law.    To which the plaintiff in error excepted.

S. T. BAILEY, in *propria persona.*

As to the first ground, that the court refused our motion to strike out the defendant's plea of usury, we think, from reading the words of the statute, ( *Prince,* 424,) it will appear that the court erred ; the statute changed the former law ; it is therefore to be construed strictly.   It provides for the mortgagor to set up a defence to this summary proceeding : a proceeding intended not to supersede the old mode of foreclosure by bill, but cumulative of that, and for the facility of the mortgagee.    But the door of equity is still left open to both mortgagee and mortgagor, if justice requires it, or they have cause.    Wherefore, the Legislature confines the mortgagor to only two grounds of defence in this summary proceeding : it declares that if payments have been made, and yet not credited, or if there are sets-off which ought to be allowed in equity, the

mortgagor may make oath thereof: hence, the maxim of law applies, that when a statute includes by enumeration one or more of a class of rights conferred, it is an exclusion of all others ; or, in mathematics and logic, an exclusion of a conclusion.    It cannot be said, with reason, that because the statute has said to the defendant, that he may come in and set up two specified defences, he is therefore entitled to set up any defence.    *Expressio unius est exclusio alterius.*

He cannot swear that he has made payments that have not been credited ; he swears they have been allowed and credited on the renewals : he cannot swear that he has sets-off that ought to be allowed in equity ; such sets-off are unknown to equity, even of the usury paid, much less of legal interest paid ; even as against the original payee, much less is it allowed against a transferree for valuable consideration, as we shall show hereafter.

As to the second ground, that Beal was not a competent witness, we rely on the well-settled principle, that if the witness is interested in favor of the party producing him, he is incompetent, but not for the other, to some extent.    Now, the record shows that Beal transferred the mortgage without recourse, so that he is secure, although the plaintiff fail to recover.    But if the rule is, as laid down by the court below, that usurious interest is recoverable back, then, if the defendant fail, and the plaintiff recover the full amount of the note, he can recover it back out of Beal. A party for whose use an accommodation note is made, is incompetent for the one who has used his name.—1 *Greenleaf Ev.* sec. 401.    But it seems to us that the court below was led into what we deem, most respectfully, the many errors which it committed, chiefly from having taken for granted that usurious contracts are void, and not merely illegal, aided perhaps by its repugnance to usury.    If this proves to be a fallacy, as we hope to maintain, then the whole structure falls to the ground.    We will endeavor to show that such contracts are only illegal, and not void : and so recoverable in the hands of an innocent holder.

It requires no authority to convince or inform this court that a contract may be illegal, and yet not void ; that contracts not *malum in se*, but only prohibited, without a declaration of their nullity *ab initio*, are only voidable, and are binding in the hands of innocent holders.    Mr. Chitty says : " Illegality of consideration is no defence to an action on a contract in the hands of a *bona fide* holder, unless it is expressly declared to be void by the Legislature."—*Chitty on Bills*, 86-7 ; 2 *Esp. R.* 530 ; 7 *T. R.* 630 ; *ib.* 390.

Indeed, so reluctant are the courts to declare contracts void in the hands of the innocent—thereby punishing them and not the guilty—that it is by no means settled law, that contracts, declared void by the Legislature, are so in the hands of the *bona fide* holder.    Hence Mr. Dwarris concludes, that it cannot be assumed in all cases that contracts declared void by the Legislature are so in the hands of innocent holders, and lays down, as the only infallible test, the addition of a penalty imposed upon those making or entering into contracts, declared void by the Legislature. —*Dwarris on Stat.* 742.

It is well known that the English courts did not arrive at a uniformity of decision upon the statutes of gaming and usury, until after long conflict of judgment.    The Court of King's Bench first settled the law, as it now stands, upon the exceeding strong language in the several statutes

upon gaming; and then came the leading case of *Lowe* vs. *Waller*, (2 *Doug. R.* 736,) which settled the rule upon usurious contracts, in the hands of innocent holders. In that case, Lord Mansfield, after expressing his great leaning in favor of the plaintiff, remarks: " But the words of the act are too strong; besides, we cannot get over the case on the statute of gaming, which stands on the same ground."—2 *Doug. R.* 744. It will be found, on reference to decided cases, both English and American, that the courts have held usurious contracts void, in hands of innocent holders, expressly on the ground that such contracts are, by their several statutes, declared void—not that there is anything in such contracts, *per se*, corrupt or morally dishonest; and they have often very strongly intimated their opinion, that the law, as it stood, worked great injustice, and aided dishonesty. Hence, so early as 58 *Geo.* 3, the English Parliament declared such contracts recoverable, in the hands of innocent transferrees. New York passed a like statute in 1830, and several other States have also adopted this obvious principle of justice.

The English judges having raised some difficulties, touching the enforcement of the act. of 58 *Geo.* 3, under certain state of facts, which often arose before them, the Parliament, to remove all doubt, and to protect innocent holders under all circumstances, passed the act, (5 and 6 *William* 4, ch. 41,) which, after reciting that several statutes against gaming and usury made void all instruments tainted therewith, thereby working great hardship to innocent transferrees, enacts, among other things, that " such instruments shall be deemed and taken to have been made, drawn, accepted, given, or executed, for an *illegal consideration.*"

The second section of the act provides that, notwithstanding an innocent holder may recover, yet that the maker, after payment, may recover back the amount from the original usurious lender.—See the act in note to *Hitchcock* vs. *Way*, 33 *vol. Eng. Com. Law R.* 250.

This act covered the whole question; it made gaming and usury merely illegal; that is, the contracts founded thereon, forbidden by law, and, therefore, voidable, not void. The able jurists who drew this act of parliament, were well aware of all the consequences which would follow. They knew such contracts may be avoided, as between the original parties, but not against innocent holders; this they intended. They also knew, that being merely illegal contracts, money once paid under them could not be recovered back; this they did not intend, and therefore added the second section of the act. The case of *Hitchcock* vs. *Way*, (6 *Ad.* and *Ellis*, 943, 33 *Eng. Com. L. R.* 249,) was on a gaming contract in the hands of an innocent holder, but made before the act of 5 and 6 *William* 4. The court held, on that ground alone, that it was not saved by the act, and was therefore void. That the courts of Georgia have, so far as we know or believe, held usurious contracts subject to the same defence, in whosesoever hands they may be, and that nothing but the principal could be recovered, we are free to admit; and yet, without intending any disrespect, we beg to add, we have never heard or seen a sensible, much less a legal, reason given for such decisions. The only reason we ever heard given, is, that the reported decisions on a statute of usury, in England and America, decide such contracts void in the hands of everybody; and this is true under the old usury laws; but, as we have already remarked, such decisions are expressly on the ground, that

the statutes declare them "utterly void." And so was the law in Georgia, up to 1822. The old colonial statute of 1759 is but a copy of the statute of Anne. Its terms are, "shall be utterly void." Doubtless, the practice of deciding under this ancient statute, led the courts into the error, to some extent, of following the spirit of its provisions after it expired in 1822. Our act of 1822 was passed about three years after 58 *Geo.* 3, and was probably suggested by it; but both acts were but forerunners of a better age. Will any man contend that it is not a reproach to any civilized people to maintain a law that punishes the innocent for the sins of the guilty, as the old usury laws, confessedly, often did? Can the laws of Georgia bear this reproach? Will the court seek for a construction which will fix upon our law such reproach? The Legislature expressly declares that the contract shall not be void, and that no forfeiture shall be incurred, but that no more than the principal shall be recoverable. They thus make the contract merely illegal, in the same manner as if they had declared that such contracts shall not be paid, but that neither principal nor interest shall be recoverable in such case; the original parties could not recover on such contracts, yet innocent parties might. Whenever the Legislature prohibits a contract, without more, the parties cannot recover on it; it is illegal; and yet innocent holders may. In this *instance*, the Legislature have said that only a part of the sum secured shall not be recovered. Does that render the contract less valid than it would have been if they had prohibited a recovery of the whole? Such a proposition assumes a mathematical absurdity. It assumes that the parts are greater than the whole. Without multiplying authorities upon the point now under discussion, I ask leave to refer the court to the decision of the Supreme Court of the United States, in delivering the unanimous opinion of the court, in the case of *Fleckner* vs. *The Bank of the United States.* Judge Story said, "The act has not pronounced that such a violation makes the transaction or contract *ipso facto* void, but has punished it by specific penalty of treble the value. It would therefore remain to be shown how, if the bank had a general right to discount notes, a contract, not made void by the act itself, could on this account be avoided by a party to the original contract, who was not a party to a subsequent transfer." "The statutes of many of the States, as well as of England, contain an express provision that usurious contracts shall be utterly void, and without such provision the contract would be valid, at least in respect to persons who were strangers to the usury."—5 *Cond. R. S. C.* 464; 8 *Wheat.* 338.

Our statute expressly declares that usurious contracts shall not be void. —*Prin. Dig.* 295. Now, it cannot be legally contended, that the plaintiff in error, having taken the note after it was due, is not an innocent holder; for, in the first place, the court below did not put his decision upon that ground, nor was it insisted on in the court below; and secondly, the evidence shows, that plaintiff did in fact take without notice, either express or implied. A note overdue, is held to carry implied notice to the purchaser, upon the principle that it says to him, this note, not having been paid according to promise, has been dishonored for some legal or equitable cause, rendering it invalid, and therefore warns the purchaser to inquire of the maker if such is the fact. But did any court ever maintain or decide, that if such was made and no objection was disclosed, or

the maker stood by, and witnessed the transfer or negotiation of his note to an innocent purchaser for a valuable consideration, that he could set up ·any defence to the note because it is overdue ? The books are full of authority to the contrary. Some authorities have gone so far as to decide, that if a prior mortgagee witnesses a subsequent mortgage to the same property, and does not disclose his mortgage, he shall be postponed, although it is not proven that he knew the contents of the deed he witnessed ; and this on the bare presumption that he did know, so stringent are the courts against fraud. A note over due is just as negotiable as one not due, only one puts upon inquiry, the other may be taken without distrust. The inquiry to be made is not as to all defences in detail ; all that the purchaser has to satisfy himself about is, whether there is any defence ; and if the maker stands by, sees his note about to be traded, and is inquired of as to when he can pay, and does not disclose any defence to the note, he virtually, by his silence, assents that there is no defence ; and if he afterwards sets up a defence, it is a fraud—a *suppressio veri* and· a *suggestio falsi*—which all courts discountenance, instead of aiding. All this was admitted by the court below in ordinary · cases of contract; but, forasmuch as the court held usurious contracts utterly void as to the interest in the hands of an innocent holder, ·it decided that neither fraud nor anything else, even an express promise to pay by the maker, could make the interest recoverable. We believe that we have shown that usurious contracts by the law of this State are only illegal, and not void ; and if so, the corollary of the court below, being founded on false premises, is itself erroneous ; and since the plaintiff in error purchased with the assent and acquiescence of the defendant, unapprised of any taint of usury, he took the note as an innocent purchaser. But admitting, for sake of argument, that such a contract is void, and not merely illegal, the court erred in deciding that the defendant, by his fraudulent conduct, could not be estopped from setting up his defence of usury. It is not true that such contracts, even under the old law of usury, which made them void, could not under any circumstances become binding. The courts have ever looked upon such defences with disfavor, and have felt that while they followed the decisions annulling such contracts in the hands of innocent holders, they were aiding, *strictissimo jure*, an iniquitous defence. Hence, whenever such party stepped within the pale of a court of equity, that court compelled him to pay principal and interest ; saying to him, he came there with unwashed hands. How much less then would any court sanction fraud in such a party ? Fraud is a subject as much discountenanced by courts of law as courts of equity. Their jurisdiction is concurrent upon all questions of fraud. In South Carolina, where all usurious contracts are declared void by statute, their courts have held,that if a maker of a note stood by, and saw his note transferred for a valuable consideration to an innocent purchaser, without disclosing the usury, he could not afterwards set up such defence.—2 *Bailey's R.* 59. Judge Story sustains, by abundant authority, that if a party, by ·his silence or acquiescence, misleads another, he shall be estopped from ever setting up defence or claim against the right or title acquired by that other ; or if one only stands by, and in silence suffers another to commit a fraud, he shall be bound by such fraud, upon the ancient maxim, *Fraus est celare fraudem.*—1 *Story's Equity*, sec. 384 to

389. So stringent are the courts of England against fraud and deceit, that the King's Bench have held, that if the insured knew of a mere rumor which would likely enhance the premium of insurance, but which rumor proved to be false, and did not apprise the underwriter of such rumor, the policy was void.—*Lynch* vs. *Durnsford*, 14 *East R.* 494.

If, then, it was legitimate to prove fraud to bind the defendant, the letter in question, which the court below repelled, was legal proof. It was further legal proof to show a promise on the part of the defendant to pay to an innocent holder a note invalid only in the hands of the original payee for a valuable consideration—that of further indulgence. But our process of foreclosure of a mortgage is only a substitute for the former mode by bill in equity. The Legislature wisely deemed, that if the debtor had no defence to make, it was unjust to the creditor to require him to raise a useless litigation : therefore they declared, that as the presumption was against one who had acknowledged a debt by a solemn deed of conveyance, the creditor need only call on him to show if he had any defence by matters arising subsequent to his acknowledgment of the debt by deed ; so that the whole litigation, if there is any, is raised by the mortgagor : he is the actor ; he makes up the issue by his affidavit—on that, and that alone is the issue formed in every case ; so that if the court should hold that the defendant may set up usury as a defence against a mortgage at law, still he, being the one who raises the litigation, and shows the usury by his affidavit, it is in effect a proceeding in equity ; and the fact that the whole proceeding is before the judge and a special jury, with which a petit jury has nothing to do, shows that the Legislature considered it an equitable proceeding, and if so, the defendant is bound to pay legal interest according to the rule in equity. If goods are pawned on usurious contracts, they cannot be redeemed without proving a legal tender of principal and interest—*Fitzroy* vs. *Gwillim*, 1 *T. R.* 153. So, if a mortgage of land be made to secure a usurious contract, it cannot be redeemed without paying principal and legal interest.—12 *Serg. and Rawle*, 46.

In Pennsylvania they foreclose at law.

The court also erred in deciding that the plaintiff was entitled to only the balance of the original sum loaned, after deducting all the payments therefrom ; for all the payments were made, and the renewals took place between defendant in error and Beal, before the transfer to plaintiff ; and the note transferred is proven to be for the balance due, after all payments, and on which only legal interest is reserved.—*Chadbourn* vs. *Watts*, 10 *Mass. R.* 121. If the court should hold that usury may be set up on the foreclosure of a mortgage, still, how can the mortgagor be allowed to set up payments of interest, and deduct them out of the principal ? When the statute says he may set up such sets-off and payments as ought to be allowed in equity, would equity allow these ? These payments of interest can only come in, in nature of sets-off ; for it is in contemplation of law a reception of money by a party not entitled to it, if it is considered as payments on usurious consideration. Clearly such sets-off cannot be allowed against a transferree for value, although he take the note after it is due.—6 *Cowen R.* 693 ; 1 *Paige R.* 112, 624. But again : most clearly nothing can be set-off but what may be sued for. A set-off is a cross-action. Now, whoever

dreamed—much less, what court ever before decided—that legal interest, after having been paid, could be recovered back? Furthermore, if our position be founded in law, that usurious contracts are merely illegal and not void, the defendant could not recover back money paid on this contract, even out of Beal, and of course he could not set off such payments, which would be equivalent to a recovery. How much less shall he be permitted to recover such amounts of payments out of a transferee, who has had no hand in violating the law or in doing him wrong, and who has not received one cent of the sum thus unjustly claimed.— *Doug.* 468; 3 *T. R.* 266; *Cowp.* 790; 1 *Hen. and Munf.* 33; 2 *Moore R.* 538; *Maule and Sel.* 500; 6 *Mass. R.* 84; *ib.* 381; 5 *Mass. R.* 385; 3 *Pick.* 446; 6 *Cowen,* 431; 2 *Fairf.* 306; 8 *T. R.* 575.

It is no answer to say, the endorsee may have his recourse back upon his endorsor to recover his losses. This is often a frail reliance; and besides, it is not in consonance with the ideas of Christian civilization and just laws to permit one who has been wronged to take his redress out of the pocket of an innocent party, and then coolly say to him, you may take your redress out of the man that has wronged me.

WASHINGTON POE and ROBERT V. HARDEMAN, for the defendant in error.

CHARLES J. M'DONALD, for the plaintiff in error, in conclusion.

The statute of Georgia does not authorize the defendant to set up usury against the mortgagee's demand on a motion to foreclose. It is only in cases of disputes arising in regard to the amount due upon a mortgage, where payments have been made, or where there are sets-off which in equity ought to be, allowed, that the party may arrest the proceedings against him under the statute. The statute prescribes the mode of procedure and the objections which the mortgagor may make. —*Prin.* 424. The amount or sum due is to be ascertained from the face of the papers, unless the defendant could prove payment. Statutes are to be construed one part by another, and statutes in *pari materia* are to be construed together. What the Legislature intended, is expressed in the 16th section of the judiciary, (*Prin.* 424,) viz : payments and sets-off. Usury is neither a payment, nor is it a set-off, and never is pleaded as either. It is not so pleaded in this case, and of course was not so regarded by the defendant. The 2d and 3d points have been decided by the Supreme Court. The court erred in charging the jury that neither the usurious *interest* nor legal interest can be recovered by an innocent holder of a note tainted with usury. This was true under the act of 1759, which declared the contract void.—*Prin.* 294. But now, by the act of 1822, (*Prin.* 295,) it is declared that the contract shall not be void on which a greater than lawful interest is reserved.

Illegality of consideration is no defence in an action at the suit of a *bona fide* holder, without notice of the illegality, unless he obtained the bill after it became due, or unless it has been so expressly declared by the Legislature.—*Chitty on Bills,* 116.

In no case is the innocent endorsee of a note or bill of exchange, affected by the consideration passing between the original parties, except

in cases in which the Legislature has declared the instrument void. If the instrument be void between the original parties, and as between them subject to the common-law maxim, that *in turpi contractu non oritur actio*, the *bona fide* holder is not affected by it, unless the legislative act declares it void. It is all the same, if the consideration be illegal at common law, or is declared so by statute, the *bona fide* holder who has a higher equity, and is always favored in the law, is protected.—*Kyd on Bills*, 280, 283 ; *Byles on Bills of Exchange*, 81 ; 2 *Espinasse*, 534 ; *Smith's Mer. Law*, top page. Contracts tainted with usury are not declared void by our statute, but are expressly declared to be not void. In the hands of a *bona fide* holder, then, promissory notes and bills of exchange, the consideration of which is usurious, are not void, but recoverable.

But it may be contended, that the note and mortgage, having been assigned after maturity, the assignee took them, subject to all the defences that might have been set up against them in the hands of the original holder.—*Story on Bills*, 210 ; 3 *Kent*, 79. This rule is not without exception, or perhaps it may be proper to say, that this is not the rule. The true rule is, that when a note over due is offered, its being over due, being out of the common course of dealing, is of itself such a suspicious circumstance as makes it incumbent on the part of the party receiving it, *to satisfy himself that it is a good one.*—*Chitty on Bills*, 243. It is the duty of the endorsee, if he takes the bill after it is due, to make inquiry concerning it.—8 *Taunt.* 19; 3 *T. R.* 82. In this case, the assignee held conversations with the maker of the note and mortgagor, who, so far from making objection, promised to pay it, and the assignee took it under these circumstances. He is a *bona fide* holder, to all intents and purposes.

The court erred, we maintain, in refusing to charge that the plaintiff, on the foreclosure of a mortgage, when defendant sets up usury, is entitled to principal and legal interest.

The defence of usury cannot be made in the shape of a plea of set-off. It is a defence against the consideration. A plea of set-off admits the plaintiff's demand, but alleges a counter-demand. In this case, the defendant has pleaded to the consideration, and not a set-off. When a statute prescribes a mode of proceeding, or a remedy, *that* must be pursued, and the defendant is entitled at law to the defences only which the statute authorizes. A set-off is, indeed, admissible only in cases of real estate, and they must be pleaded and allowed before foreclosure. —*Prin.* 424. If the mortgagor has made payments, or has amounts due him from the mortgagee, which by agreement are to be applied to the mortgage, such payments and amounts would of course reduce the amounts due upon the mortgage, and these would be allowed as part payments.

But to allow the mortgagor to bring in any demand which he might have against the mortgagee, and set it off against the mortgage debt, would be to destroy the mortgage security. The mortgagee might have other demands against the mortgagor besides those secured by the mortgage, and for which he holds no security. It would be unjust, therefore, to allow sets-off to be pleaded, except such as apply specially

26

to the mortgage. A bill might be filed, perhaps, to settle all accounts, but then equity would only allow ascertained balances of other accounts to be applied to the mortgage.—4 *Johns. Ch. R.* 616 ; *Hopkins,* 270. But what is sought to be brought in by defendant is, not a set-off, but an objection to the consideration, which is not admissible by the statute. The mortgagee must swear to the amount due on the mortgage. This, of course, is to be ascertained by the agreement between the parties.

A debt is a sum of money due by certain and express agreement, as by a bond for a determinate sum, a bill or note ; a special bargain ; a rent reserved on a lease ; when the quantity is fixed and specific, and does not depend on any subsequent valuation to settle it.—3 *Black. Com.* 154, side page. The amount due, then, appears upon the note or mortgage. The illegality of the consideration is matter of avoidance, and, in actions at law, must be specially pleaded.—1 *Chitty* 551.

The statute does not authorize the defendant to arrest the proceedings of the mortgagee or his assigns, for any matter of avoidance or illegality in the consideration. It is only where there is a dispute as to the amount due. The mortgagor is not without a remedy in such case against the mortgagee, though against a *bona fide* assignee he is remediless. The assignee, in this case, is so *bona fide ;* for he was not cognizant of any defect in the consideration, and the mortgagor, knowing that he was about to trade for it, did not inform him of difficulty, and encouraged the negotiation by promising to pay it. Were the mortgage in the hands of the mortgagee, or were the defence available against the assignee, the mortgagor might file his bill to enjoin the proceedings, and have the usury inquired into. He, therefore, in any event, has his remedy, but it is in equity. But were he to file his bill, the court would require of him to do equity. He must, in that case, pay up the principal and interest. The court will not give a latitudinarian construction to the statute to let in an inequitable defence.

A court of law, in the exercise of its equitable powers, will put the party, in whose favor they are exerted, on terms. This has been expressly adjudicated, *Fitzroy vs. Gwillim,* where the plaintiff, in an action of trover, for the recovery of goods pledged for a usurious loan, was required to pay principal and legal interest before she could recover. Lord Mansfield decided the action of trover was an equitable action.—1 *Term R.* 154; *Hindle* vs. *O'Brien,* 1 *Taunton,* 414.

The authority of these cases has been questioned. The principle of them is maintained, and they have been questioned only on the facts, except that the Court of King's Bench, in one case, (*Roberts* vs. *Goff,* 4 *Barn. & Ald.*) refused to recognize as authority the practice of the common pleas.

His Honor Judge Lumpkin gave no opinion in this case, the defendant in error being a relation.

*By the Court*—Nisbet, Judge.

This was a proceeding under our statute to foreclose a mortgage upon real estate. The petitioner, S. T. Bailey, Esq., was the assignee of the note and mortgage securities, having taken them after the maturity of the

**403**

note. The defendant filed the plea of usury, also, alleging payments, which plea was verified. Upon the trial below, the counsel for the plaintiff moved the court to strike out the defendant's plea, upon the ground that the statutes of Georgia do not contemplate, or authorize, the setting up of usury at law against a mortgage on a rule to foreclose. This motion was overruled, and that is claimed to be the first error committed by the presiding judge in this cause.

The act of 1799, (*Prin. Dig.* 423, 424,) after prescribing the mode of proceeding to foreclose a mortgage on real estate, farther enacts as follows : " And, in case of any dispute as to the amount due on any mortgage, if the mortgagor shall appear within the time prescribed by this act, and make affidavit that he hath made payments which have not been credited on said mortgage, or that he is entitled to sets-off, which in equity ought to be allowed, the court shall appoint one or more fit person or persons to audit and liquidate the same ; but either party shall be entitled to a new trial therefrom," &c. It is argued by the counsel for the plaintiff in error, that the right of defence against the foreclosure of a mortgage, given by this statute, is limited to payment and equitable off-sets, and, inasmuch as the plea of usury is neither payment nor set-off, it cannot be allowed. The terms of the statute do not explicitly embrace such a plea, nor yet do they necessarily exclude it. The act declares, that in case of *any dispute* about the amount due on a mortgage, if the mortgagor shall appear within the time prescribed, and make affidavit of having made payments not credited, or that he is entitled to off-sets which in equity ought to be allowed, the court shall appoint persons to audit and liquidate the accounts between the parties, &c. As to payments and equitable off-sets, they are to be verified and submitted to auditors ; the statute is very explicit as to the right and mode of defence, so far as these are concerned. But is the defence necessarily confined to these ? The act contemplates a dispute about the amount due, and seems to admit the right of contesting the amount due upon other grounds, as well as those of payment and set-off. The statute of Georgia inhibits the collection of lawful and usurious interest upon contracts tainted with usury, when attempted to be enforced against the borrower. Now, the statute which, when plead and sustained, reduces the amount of the plaintiff's recovery by the lawful and usurious interest, is neither payment nor set-off. But the plea of usury does create a dispute about the amount due ; it makes an issue as to the amount the plaintiff is entitled to recover. How would it be if the mortgage was given to secure a note given for a gaming consideration, or to compromise a felony ? Would, in such case, the defendant be debarred his defence ? It is worthy of attention, in construing this statute, that usury is a defence allowed rather in furtherance of that public policy upon which laws are founded, than as a favor to the borrower. If a contract by law is utterly void, the defence upon grounds of public policy ought to be let in. *Quoad* the interest, this court has determined that usurious contracts are void.

The maxim " *expressio unius est, exclusio alterius*," the express mention of one thing implies the exclusion of another, is frequently quoted in our courts. It was claimed to apply to the construction of this statute.

It may not be, therefore, amiss to look into its meaning, and inquire

how far it is applicable in the construction of statutes ; and endeavor to reduce it, if possible, from a vague generality to a definite signification. This maxim applies, in the first place, rather in the construction of contracts than statutes, and more particularly to deeds. We are not to be understood, however, to say, that it is not at all used in the interpretation of statutes. A maxim very nearly identical with it, to wit, *expressum facit cessare tacitum*, applies more particularly in the construction of statutes. This maxim then only means, " that if you expressly name (in a deed or other contract, for example) some, out of certain requisites, the inference is *stronger* that those omitted are intended to be excluded, than if none at all had been mentioned."—*Broom's Legal Maxims*, 278–9, 280 ; 9 *A. and E.* 953. The inference drawn from the fact of specification is *stronger* but not *conclusive*, that all other things are excluded. Now, in the act of '99, because payments and equitable offsets are expressed, the inference is not conclusive that no other grounds of defence are to be admitted. This act is open to this construction, to wit : the Legislature, in mentioning payment and equitable offsets, intended, in the *first* place, to put the defendant upon terms, as to these two grounds of defence ; (this is proven in the requirement that they shall be filed within a specified time, and verified ;) and *secondly*, to create a board of auditors to liquidate the accounts when they are filed ; leaving all other defences where the general law places them. This construction is aided by the direct reference made in the act to disputes as to the amount due. That is to say, when there is a dispute between the parties as to the amount due, and that dispute has reference to payment or equitable sets-off, the mode of defence prescribed in the statute must be followed ; but if the dispute has reference to any other legal defence, then as to *that* the general law of pleading obtains. Int he application of the maxim, *expressum*, &c., to statutes, it is not to be understood that where the Legislature has put the strongest cases, the lesser are therefore to be excluded ; but, on the contrary, there are cases where, by construction, the greater are intended to include the less.—*Broom's Legal Maxims*, 285.

But the view of this subject, which to the mind of this court is decisive, is this : The process of foreclosure in England is by bill in chancery. Our statute dispenses with the equitable proceeding, and gives a more easy, direct, and less expensive process of foreclosure at law. This legal mode is in lieu of the bill in chancery. This is, therefore, what we are in the habit of calling an equitable statute ; it is not in derogation of the existing law, and, therefore, to be construed strictly ; but it is declaratory of it, and remedial, and, therefore, to be construed liberally. It affirms the law of foreclosure, by providing a different remedy under it. The mortgagee, instead of being driven into a court of chancery to foreclose, is admitted at law to all the rights which he had before the statute, in equity, as to this subject matter. Can we infer that the Legislature intended to give this new and summary mode of foreclosure to the mortgagee, and not give equivalent rights of defence to the mortgagor ? to create for the plaintiff an easy and rapid mode of foreclosure, and still hold the defendant to the necessity of going into a court of equity, to assert his rights against it ? The Legislature intended to do no such iniquitous thing. Upon the creation of a new remedy, we think the rights of defence which belonged to the old

remedy, unless expressly inhibited, attach to the new. As the plaintiff is here let into the rights at law, which he before had in equity, so the defendant is let in, also, at law to those rights which he before had in equity. It will not be denied but that in England, upon a bill, to enforce a usurious security, the defendant could plead the statute of usury. If so, he may, under our statute, against a process to enforce a usurious security, also plead the statute of usury. Such a plea is not, as we think, expressly, or by fair construction, inhibited by the act of 1799.

The enumeration of certain defences which he may make, and the manner of making them, does not, under these views of this subject, exclude all others. It is a sound general principle, says Broom, in the exposition of statutes, that less regard is to be paid to the words used than to the policy which dictated the act.—*Broom*, 247.

Now, the policy of the act of 1799 was to give to both parties the rights at law, which could only be asserted in England, by a tedious and costly proceeding in equity. Again, where the words are general, and a statute is only declaratory of the common law, it shall extend to *others, besides the persons or things named.*—*Broom*, 285–6 ; 14 *Mass*, 92–3 ; 3 *Hill*, 472.

We think, therefore, that the court did not err in refusing to grant the motion to strike out the defendant's plea.

The second ground of error is, that the court improperly admitted N. H. Beal, the payee of the note, and mortgagee, and also the transferror of the mortgage, to be sworn in the case. The witness was called by the defendant to prove usury in the contract. The record discloses that the mortgage and note were transferred to S. T. Bailey, by Beal, the witness, without recourse upon him.

The only ground relied upon by the plaintiff in error, to exclude Beal, was interest. The disqualifying interest of a witness must be *some legal, certain and immediate interest, however minute, either in the event of the cause itself, or in the record, as an instrument of evidence in support of his own claims or against him in a subsequent action.*—1 *Greenleaf*, sec. 386 ; 1 *Starkie Ev.* 102 ; 3 *C. R.* 27 ; 6 *Bing.* 390 ; 7 *C. R.* 62.

The true test of the interest of a witness is, that he will either gain or lose by the *direct legal operation of the judgment,* or *that the record will be legal evidence for or against him in some other action.*—*Greenleaf*, sec. 390 ; *Gilbert Ev.* 225 ; 3 *C. R.* 27 ; *East*, 581. The application of these two rules to this case will determine the interest and, therefore, the competency of this witness. We think that the fact of the transfer being made without recourse, by Beal to the plaintiff, Bailey, very materially affects this question. Bearing this fact in mind, we apply the test. It is very clear that he could not gain or lose a single cent by the direct legal operation of the judgment. Let that be for the plaintiff or the defendant—for the whole amount of the plaintiff's claim, or for loss—its legal effect will not be to put anything into his pocket or abstract anything therefrom. Having parted with these securities, the judgment will be *inter alios.* Can the record in this case be legal evidence for or against him in some other action? He is called to prove usury in the securities, which he has transferred to the plaintiff. Suppose his testimony does not establish the usury—could it in that event

affect, in any way, the rights of the plaintiff? Could the record, in that event, be legal evidence for or against him, in any suit which might afterwards occur between him and the plaintiff? We think not; because, in that event, the plaintiff's rights would be the same, and the judgment, so far as his testimony affects it, the same as they would be if he was not sworn at all.

But, in point of fact, he did establish the usury, and the effect of his testimony was to reduce the amount of the plaintiff's recovery. Now, if he, by his contract with the plaintiff, was liable over to him as transferror of these securities, in that event, the record of this cause would be evidence against him, in an action by the plaintiff for the loss sustained upon them. But, by his contract with the plaintiff, the plaintiff agreed to take the securities at his own risk, without recourse upon Beal. Such being the case, we do not believe that this record could be legal evidence, for or against the witness, in any suit which we can imagine could originate between him and the plaintiff. How, then, will he stand affected towards the defendant? If he proves no usury, then the record will be just as though he had not been called, and if he does, then defendant is allowed it, in this action, as a credit upon the plaintiff's claim, and could not recover it a second time, out of anybody. So that we do not perceive that in any possible contingency the record of this action could be legal evidence, in favor or against the witness; our judgment is that he was competent.

We did not understand the third ground to be insisted on in the argument, and shall therefore express no opinion upon it.

The fourth exception alleges error in this, that the court charged the jury, that neither legal nor usurious interest can be recovered on a contract tainted with usury; and it made no difference whether it was in the hands of the original payee or an innocent endorsee.

The Legislature of Georgia have declared, that upon all contracts tainted with usury, the principal of such contracts only shall be recovered.—*Prin. Dig.* 295. As a general proposition, we think it is true, that neither legal nor usurious interest can be recovered in this State upon usurious contracts. We know of but one instance in which the lawful interest, even, can be recovered; and that is, where the borrower is compelled to go into equity, to prove that the contract is usurious. In that case he will be held to do equity, that is, pay the principal and legal interest, before he can be relieved from the payment of the usurious interest. Nor does it matter whether the usurious contract is in the hands of the original payee or an innocent endorsee. It is very true that the courts in England struggled hard to protect an innocent endorsee against the plea of usury, because of the obvious hardship of the case. They, however, did yield to the irresistible force of the reasoning upon this subject, and determined that a security, void by statute, as in the case of usury and gaming, was void in the hands of a *bona fide* holder, without notice. The security being *utterly void* by law, it could acquire nowhere, and in no way, any vitality. A transfer, for value, to one ignorant of the taint, could not breathe life into the contract. Void in the beginning, it was void forever, and everywhere. The other reason for this determination of the British courts is this: If a usurious contract could be enforced, in the hands of a third person, then it would

be the easiest thing imaginable to defeat the statute of usury. The public policy of the laws against usury imperiously required such a decision. It was, consequently, made, and, for a long series of years, acquiesced in.—*Chit. on Bills,* 10th Am. ed. 86–7–8 ; *Lowe* vs. *Waller, Doug.* 736 ; 1 *Stark.* 385 ; 2 *Bar. and Ald.* 590 ; 8 *Price,* 288.

These decisions have been followed by similar adjudications in the United States.—3 *Johns. Cases,* 206 ; 1 *Bay,* 28 ; 1 *Greenleaf,* 167 ; 2 *Caine's Rep.* 150 ; 10 *Mass.* 121 ; 3 *Day's Rep.* 268. The law, as thus settled, was modified by statute, in England, first by the act of 58 *Geo.* 3, which protected a holder, *for value,* without notice. By statute of *William* 4, bills and notes given for usurious considerations are declared to be not void, but given for an illegal consideration. By act of 3 and 4 *William* 4, bills and notes not having more than three months to run, were exempted from the operation of the usury laws. This exemption, by 7 *William* 4, and 1 *Vict.,* was extended to bills and notes not having more than twelve months to run. And by 2 and 3 *Vict.* this exemption was extended to *all contracts,* for the loan of money, above ten pounds. And other provisions are likewise found in the same statute touching this matter.—*Chit. on Bills,* 87–8–9.

Thus we find that, at common law, as it stood in May, 1776, when we adopted it, all securities tainted with usury were void in the hands of innocent holders. And now, therefore, the common law upon this subject is the law of Georgia, unless our own legislation has repealed it. The statutes of England, referred to in repeal of the common law, are all repealed since the year 1776, and, therefore, not of force in Georgia.

It is argued by counsel for plaintiff in error, that the common law made void these securities in the hands of *bona fide* holders ; because by statute, in England, such securities were declared *utterly void ;* that our statute does not make the contract utterly void, and, therefore, the common law does not apply in this State ; for, say they, *cessante ratione legis, cessat ipsa lex.* The difference between the English statute of usury and ours is this : their statute makes the whole contract void—ours makes the contract void as to legal and usurious interest. This court has so construed the act of 1829, in the case of *Winkler and Scudder.* The reason, therefore, of the common law applies here in all its force, so far as the interest is concerned. To the interest only do our pleas of usury apply, and we hold that they apply, whether the security be in the hands of the original payee, or an innocent holder, without notice.

It was argued by counsel for plaintiff in error, that the plaintiff in this cause, below, had no notice of the usury in the contract, and, therefore, no evidence could be admitted against him, under the plea of usury. The record does not show that he had express notice ; nor is this necessary, to admit the defendant's plea. It is apparent on the record, that the plaintiff took this note and mortgage after it fell due. The learned counsel argued, that bills and notes are negotiable after as well as before they fall due ; which proposition we do not controvert. He, however, claimed, that the only effect of the bill, or note, being over due, is to put the world, and, therefore, the holder, upon guard as to taking it. To this proposition we do not assent. The dishonor of the note, does put the world upon its guard ; and, for that very reason, the holder takes it, liable to all the equities between the original parties. The presump-

tion of law is, that there are equitable defences to a dishonored note, or bill, else it would have been paid at maturity. The fact, therefore, of dishonor is notice to the holder. He, generally, takes it on the credit of the person who gives it to him. The rule is laid down with great precision and perspicuity by Lord Ellenborough, in *Timson and Francis,* 1 *Camp.* 19, in these words: "After a note, or bill, is due, it comes disgraced to the endorsee, and it is his duty to make inquiry concerning it. If he takes it, though he gives a full consideration for it, he takes it on the credit of the endorser, and subject to all the equities with which it may be encumbered."—3 *T. R.* 82; 7 *T. R.* 431·; 3 *T. R. n.* 483; *Doug.* 632; 6 *Bingh.* 109; 5 *Mass.* 299; 6 *ib.* 451; 3 *Johns. Rep.* 124; 7 *Johns. Rep.* 26; 4 *Greenlf.* 415; 3 *Wend.* 605; 12 *Wend.* 523; 8 *Conn.* 336; 10 *Wend.* 86.

In connection with this head of error, it is convenient to consider the last, which is as follows, to wit: The court declined to instruct the jury, that the defendant, knowing that the note was about to be transferred by N. H. Beal, did not notify the plaintiff that there was any usury to be plead against it, but represented to him that it would be fully paid, and therefore was not entitled to make this defence. The facts as to this point are are as follows: N. H. Beal, being about to trade this note and mortgage to Bailey, sent for the defendant, and a conversation took place relative to them. The defendant was informed that Beal was about to transfer the securities to Bailey, and did not disclose that the note was usurious, but stated, in the presence of the plaintiff and Beal, that he did not like to be sued, and urged both of them to use their influence with the legatees, (for whom Bailey was then acting as agent,) to get him indulgence until the next fall or Christmas, when he would pay every dollar of the note, principal and interest. Nor did the witness, Beal, disclose the usury. Afterwards, and on the same day, the plaintiff took the note and mortgage. The doctrine asserted in the last ground of error, as founded upon these facts, we take to be this: If a party, by the willful suggestion of a falsehood, is the cause of a prejudice to another, who has a right to a full and correct representation of the fact, such party's claim ought to be postponed to that of the person whose confidence was induced by his representation; and there can be no real difference between an express representation and one that is naturally and necessarily implied from the circumstances. A party who enables another, too, to commit a fraud, is himself answerable for consequences. We recognize, in these propositions, sound law; they obtain, as rules in equity. For example, a man having a title to an estate offered for sale, and knowing his title, stands by and encourages the sale, or does not forbid it, and another is induced to buy, the purchaser's title is good. So one holding a mortgage upon an estate, stands by and sees the mortgagor execute another mortgage, without disclosing the existence of his own, his older mortgage lien will be superseded.—*Story's Eq.* sec. 384, 385; *Sugden on Vendors,* ch. 16; 6 *Johns. Ch. R.* 166 *a* 172; 1 *ib.* 354. Courts of law also act upon the same just and enlightened principles. Lord Denham, in *Pickard* vs. *Sears,* (6 *Adolph. and Ellis,* 474,) says: "The rule of law is clear, that where one by his words or conduct, willfully causes another to believe in the existence of a certain state of things, and induces him to act on that belief, so as to alter his previous position, the former is concluded from

averring against the latter a different state of things, as existing at the same time."—9 *B. & Cres.* 586 ; 3 *Barn. & Ald.* 318, *note (a)* ; 14 *East,* 994 ; 1 *Story Eq.* 375, *note.* Applying the principles, under the facts in this cause, to the right of the defendant to plead, we have no hesitation in saying, that they would preclude him from setting up all defences, except the invalidity of the note by law. They would preclude him generally, but do not preclude him in this case ; *because the defence of usury is founded on public policy, and no act or omission of the borrower, however fraudulent, can make valid a note declared by the law void on account of usury.—Blydenburg,* 87 ; 1 *Bulstrode,* 17 ; 3 *J. C.* 206. The case relied upon to sustain this ground of error, reported in 2 *Bailey,* 59, seems at first view to sustain it ; but upon looking at it carefully, I find that it has really no relevancy to it whatever. It is a very brief report. The statement (and that is the whole case) is this : " Where the endorser of a note, made to raise money at usurious interest, represents to a purchaser that it is a business note, made for a *bona fide* consideration, and the maker is present and acquiesces, it *is a fraud upon the purchaser,* and *both are liable.* Yes, both are liable, but not on the note. They are both liable for *the fraud,* in the proper form of action. So here, it may be, (but as to that the court expresses no opinion,) that both Beal, the endorser, and Lumpkin, the maker, are liable to Bailey. We do not find any error in the record as to the two assignments last considered.

The 5th ground of error is, that the court charged that any payments of legal or usurious interest, made at any time previous, on prior renewals, must be deducted out of the sum originally loaned, and the balance was all the plaintiff was entitled to recover. In *Winkler* vs. *Scudder,* tried at Hawkinsville, this court determined this point, in accordance with the charge of the presiding judge in this case ; we find no reason for reversing that decision.

The next error complained of is in this : that the court refused to charge the jury that the plaintiff, on the foreclosure of a mortgage, where the defendant sets up the plea of usury, is entitled to recover principal and legal interest. This exception assumes, that the plea of usury is analogous to a proceeding in equity on the part of the borrower to establish and escape from the usury. On such a proceeding, we admit, as already stated, that the borrower must do, before he can get, equity ; that is, he must pay not only the lawful interest, but the principal. But this proceeding is not in equity, but in law. We have already undertaken to show, that under our act of 1799, the defendant is entitled to the plea of usury. But whether this proceeding be considered at law or in equity, in either case Bailey is the plaintiff; he is the moveant. The defendant is brought into court by a process sued out at his instance. Now, the rule is well settled, that where the lender goes into equity, or to a court of law, to enforce a usurious contract, he cannot recover either the legal or the usurious interest.—1 *Fonblanque* 190, *note* ; 5 *John. Ch. R.* 136. See also this opinion on the first assignment.

We find but one more point made, for our consideration in this case, and that is, that the court declined to charge that the payments of interest, made on previous renewals, could not be deducted from the amount due on the note sued on ; because *that* was a note bearing legal interest, and therefore not usurious. The facts are, that the note sued

on was in renewal of previous notes, tainted with usury ; and that only a part of the interest reserved had been paid. It is also proven that the note in suit bore interest at eight per cent. only.

The infection of usury follows all the securities, however varied in form and amount, which may be afterwards given for the same debt.— *Blydenburg*, 98 ; 5 *Conn.* 184 ; 15 *Mass.* 96 ; 3 *J. C.* 206 ; 20 *Johns. R.* 285 ; 9 *Cowen*, 647 ; 6 *Wendell*, 415.

The renewal of the last note, at only lawful interest, does not create an exception to the rule. If, upon a usurious contract, the whole interest, and part of the principal, is paid, and the debt is renewed at lawful interest, and that note negotiated, and itself renewed to the endorsee at lawful interest ; it was held that the last note was not obnoxious to the statute of usury, in the hands of the endorsee.—10 *Mass. R.* 120. This case was relied upon, by counsel for plaintiff in error, in the argument. But its facts are very different from those of the case at bar. According to the testimony in this case, the usurious interest reserved had only been paid in part. The note sued on still covered, and was designed to secure, illegal interest. If the case from 10 *Mass. R.* be authority, it cannot help the plaintiff in error. Although the radical vice of a usurious contract attaches to and infects all future securities for the same loan, yet the contract may be purged. For example : if there is an accounting between the parties to a usurious contract, and all sums previously paid usuriously are deducted, and a new security given for the balance, the contract is said to be purged, and the last security taken is valid.—*Saunders' Plead. and Evid.* 898 ; 2 *Car.* and *Pay.* 397 ; 1 *R.* and *M.* 123 *S. C.* ; 1 *Camp.* 165 ; 2 *Taunton*, 184.

There is no purgation in this case. We affirm the judgment of the court below.