## John W. Burson v. Walter S. Huntington.

*Appearance: Waiver.* An appearance and plea to the plaintiff's declaration waives all irregularities in the service and return of process.

*Promissory notes: Burden of proof: Signature: Delivery: Revenue stamp.* An affidavit, filed with the plea to a declaration upon a promissory note, which denies only the delivery of the note, admits the genuineness of the signature; and the production of the note, together with proof of the indorsement by the payee, establishes a *prima facie* case for the plaintiff.

The delivery of a promissory note by the maker is necessary to a valid inception of the contract. The possession of a promissory note by the payee,

or indorsee, is *prima facie* evidence of a delivery. But if it appear that the note has never been actually delivered; and that without any confidence, or negligence, or fault on the part of the maker, but by force or fraud, it was put in circulation, there can be no recovery upon it, even when in the hands of an innocent holder.

A revenue stamp is not essential to the validity of a promissory note; and the want of such a stamp would not be notice of its invalidity.

*Evidence: Testimony of a deceased witness.* It is not necessary that a witness called to prove what a person, since deceased, had testified to on a former trial, should be able to recollect the precise words of the deceased witness. It is sufficient if he be able to state that he recollects and can give the substance of the testimony.

*Heard July 6. Decided October 11.*

Error to Kalamazoo Circuit.

This cause was brought into the Circuit Court for the County of Kalamazoo by appeal from the judgment of a Justice of the Peace, in an action in which Walter S. Huntington was plaintiff, and John W. Burson defendant. The Justice's transcript states that the plaintiff declared verbally on the common counts in *assumpsit* and upon a promissory note, which was filed at the time of declaring, and of which the following is a copy, viz:

"SCHOOLCRAFT, MICH., Apr. 12th, 1866.

"Ninety days from date, for value received, I promise to pay A. N. Goldwood, or order, one hundred and twelve dollars, and fifty cents, with interest. John W. Burson." Indorsed on the back,—"A. N. Goldwood."

The defendant filed an affidavit denying the delivery of the note, and also a plea and notice in writing.

The defendant, in the affidavit filed with his plea and notice, deposes "that the written instrument, declared on in this cause by said plaintiff, was never delivered by this defendant, to the said A. N. Goldwood, mentioned in said written instrument, nor to any other person for the said A. N. Goldwood, or any other person, and that this defendant never authorized any other person to deliver the written instrument for him, this defendant, to the said A. N. Goldwood, or to any other person; and defendant further

says that this deponent never placed any United States internal revenue stamp upon said written instrument, and never authorized any other person to do so for him, or to cancel the same; that said written instrument was taken from the house of this defendant, in this defendant's absence from the same, by the said A. N. Goldwood, without the knowledge or consent of the deponent at the time."

On the trial before the Justice, the jury found a verdict for the defendant, and the plaintiff appealed.

On the trial in the Circuit Court, the defendant objected to the jurisdiction of the Court, that: 1st. It does not appear that there was any legal service of the summons upon the defendant in the case. 2d. It does not appear that the summons was ever delivered to any officer, or in the hands of any person authorized to serve the same. It does not appear that the parties, or either of them, ever appeared before the Justice in pursuance of the requirement of said summons; which objections were overruled by the Court, and the defendant excepted. The signature of A. N. Goldwood on the back of the note having been proved, the plaintiff then offered to read the note in evidence to the jury. The defendant objected, on the ground that the execution of the note had been denied by affidavit of defendant, filed with the Court under the statute, and the signature had not been proved; which objection was overruled by the Court, and the defendant excepted. Counsel for defendant again objected to the reading of the note in evidence, upon the following grounds: There is no proof of the signature of defendant to the note; the execution of the note is denied under oath; the note is not stamped, and the stamp canceled, as required by the laws of the United States; which objections were overruled by the

Court, and the defendant excepted. The note having been read in evidence, the plaintiff rested.

On the part of the defense it was shown that Ellen Burson had been sworn as a witness before the Justice, and that she had since died.

Zachariah Fletcher was then called, and testified that he knew Ellen Burson in her lifetime, and heard her give all her testimony before Justice Allen. Being asked to state what she testified to on that trial, he answered—I cannot state her precise words; can give the substance of what she said. The counsel for plaintiff objected to the witness stating her testimony any further, upon the following grounds: 1st. It does not appear that the witness can repeat her testimony. 2d. It calls for conclusions as to the effect of her testimony. The objection was overruled by the Court, and the witness testified:

"That Goldwood came to the house of defendant and told defendant he had come to finish up that matter. They sat down, and Goldwood wrote this note. Defendant signed it. Goldwood said he wanted security or a signer. Defendant said he would go out and see his uncle. His uncle was at the barn at the time. Defendant laid the note on the table, and told plaintiff not to touch it until he came back. Defendant went out of the house to the barn, and before he returned, Goldwood picked up the note and started out doors with it. She told Goldwood to let the note be on the table until defendant came back. Goldwood said he was going to take the note, or proposed to have it, or something to that effect, and went off with it. He started towards Kalamazoo. She said there was no stamp on the note at the time Goldwood took it away."

After the testimony of the parties was closed, the counsel for the plaintiff moved to strike out all the testimony

of witness Zachariah Fletcher, which purports to be the
testimony of Ellen Burson, given on the trial of this cause
before the magistrate, for the reasons: 1st. The testimony
is simply the conclusion of the witness and not her state-
ment. 2d. The plaintiff is shown to be a *bona fide* holder
of the note before maturity, and her testimony is therefore
irrelevant; to which the counsel for defendant objected; but
the objection was overruled by the Court and the said tes-
timony stricken out: the counsel for defendant excepted to
the ruling.

The counsel for the defendant then asked the Court to
charge the jury:

1st. That if they find that A. N. Goldwood, the payee
named in the note, took this note after it was drawn and
signed by defendant, without the knowledge, and against
the will and consent of the defendant, and before the
defendant had delivered the note to any person, the
note thus obtained would be void in the hands of said
Goldwood.

2d. That such note would be void in the hands of any
subsequent holder, deriving possession of the same from said
Goldwood, whether for value or not.

3d. If the jury shall find that the plaintiff had notice
of the means and manner used by A. N. Goldwood, as
above stated, in getting possession of the note at the time
he indorsed and delivered it to the plaintiff, the plaintiff
could not be considered an innocent holder of the note.

4th. That whether the plaintiff in this cause had such
notice, or not, is a question of fact to be found by the jury
from all the testimony in the case. That the fact of the
plaintiff having such notice need not be proved by positive
testimony, but may be proved by circumstances.

5th. That this note in suit, if drawn and signed by
the defendant, and if not afterwards delivered by him or

by his authority to some other person, had no legal exist-
ence, and is therefore void.

6th. That if the jury shall find that the note in ques-
tion upon its face showed at the time that the plaintiff
received it of A. N. Goldwood, or during the time Goldwood
had the note plaintiff saw the same, and it was not properly
executed, and was invalid under the laws of the United
States for the want of a proper stamp, then the plaintiff
cannot be considered as a *bona fide* holder, though he may
have given value for the note.

7th. That if the note bears upon its face an illegal
stamping by the payee therein named, and did so bear such
illegal stamping at the time it was indorsed to, and obtained
by the plaintiff, this fact alone should have been suffi-
cient to put the plaintiff on inquiry as to its validity when
he obtained it, and if he failed to do this he cannot be
deemed an innocent purchaser for value.

And thereupon the Court charged the jury as follows:

The present is an action of *assumpsit*, brought to recover
the principal and interest moneys claimed to be due upon
a negotiable promissory note. The plaintiff claims to be the
holder of said note by purchase. The action is brought in
the form prescribed by statute. The declaration consists of
the common counts, with a copy of the note appended.
The defendant having failed to deny the execution of the
note on oath or by affidavit duly filed, it becomes unneces-
sary for the plaintiff to prove such execution on the trial
of the case. By offering the note in evidence, then prov-
ing it to have been indorsed and delivered to him, the
plaintiff in such case makes out a *prima facie* case for its
recovery.

The real questions raised upon this trial are those
started in the defense set up, and had reference almost
solely to the doctrine of our commercial law and the rights

of the parties interested in negotiable or commercial paper. As between first parties to such paper, as maker, payee, the right of defense is generally as ample in range, as the facts which would invalidate the contract or claim; as, for instance, illegality, fraud, want or failure of consideration or any unwarrantable means for obtaining it. A like rule prevails in an action between the maker and a subsequent indorser, or holder, coming into possession or ownership after the note has matured, and become due and payable by its terms.

The same rule governs also as between the maker and holder by purchase before maturity and for value, but with notice of existing infirmities in the paper, or its surroundings, which would *invalidate the same*, as, for instance, that the note had been given upon the sale and purchase of intoxicating liquor in this State.

But when the action is between the maker and *bona fide* holder for value of negotiable paper, purchased before its maturity and without notice that the same is different, such holder is not subject to equities that may exist between first parties. The law commercial protects such holder from the defenses which might be set up, as between the parties. In general terms facts going to impeach or invalidate the paper cannot be resorted to on the defense. The rule itself is one of commercial necessity in order to impart confidence and steady value to this class of papers in commercial and business transactions.

The counsel for defendant has presented to the Court a series of seven requests to charge the jury, and to which the Court will now direct your attention. As to the first request, the Court declines to charge as requested, but modifies the request to charge (in this form provisionally) that if a party negligently allows his negotiable note to get into

circulation, or if after it has passed from his possession he either acknowledged or by silence acquiesced in a claim of its validity, by the holder; to which refusal to charge as requested, and also to said modification of the request, the counsel for defendant excepted.

As to the second request, the Court declines to charge as requested; to which refusal to charge as requested in said second request, the counsel for defendant excepted.

As to the third request, the Court charges you as requested, with the addition, that if they also find that Goldwood obtained the note by unlawful means of which the plaintiff had notice, then the plaintiff cannot be considered an innocent holder of the note. To the charge contained in the addition made by the Court to the request, counsel for defendant excepted.

As to the fourth request, the Court charges as requested.

As to the fifth request, the Court charges that such note would be invalid in a suit between the original parties, but in the hands of an innocent holder for value before maturity and without notice, the rule would be subject to the qualifications and limitations already expressed in this charge. To the refusal of the Court to charge as stated in this request, and to the charge as given by the Court in relation thereto, counsel for defendant excepted.

As to the sixth and seventh requests, the Court declines to charge as requested, but offers to each of said requests the following modifications: The Court will not pronounce upon what precise facts are necessary to put a party upon inquiry, so as to charge him with notice, but states the law to be that if the jury found the plaintiff had notice of facts which should have put a prudent man upon inquiry as to its validity, then the jury may find that the plaintiff purchased with notice; to which refusal to charge as stated

in defendant's sixth and seventh request, and to the charge generally of the Court relating thereto, the counsel for the defendant excepted.

The jury found a verdict for the plaintiff, and judgment being entered thereon, the defendant brings the cause into this Court by writ of error.

*Thos. R. Sherwood,* for plaintiff in error.

I. The Circuit Court had no jurisdiction in this case. *a.* There was no *legal service* in the summons.—*2 C. L. §§ 3911, 3912. b.* The record does not show an appearance of defendant in pursuance of the writ. *c.* The appearance as stated in the record was not sufficient to give the Court jurisdiction either of the person or of the subject matter. It was not a voluntary appearance under the statute.—*2. C. L.,* §§ *3662, 3713.*

II. The execution of the note in suit was denied under oath by the defendant.—*2 C. L.* § *3767.* The plaintiff should have proved the defendant's signature to the note before reading it in evidence.

III. The conversations testified to by witnesses Brown and Hawes, were not proper rebutting evidence, and immaterial.—*1 Arch. N. P., 41; 1 Hill., 300; 3 Caines, 217; 12 Johns., 306; 1 Strange, 94.*

IV. The court erred in striking out the testimony of Ellen Burson, as given by witness Fletcher, and particularly for the reasons given by counsel for plaintiff.—*1 Green. Ev.,* § *165; 10 S. & R., 14, 16; 16 Mich., 150.* Her testimony showed the note was never delivered,—Goldwood's possession of it fraudulent and without consideration,— and whether the plaintiff was a *bona fide* holder was a question for the jury.—*3 Kent. Com., 103, 11th Ed.; 3 Johns. Cases, 259; 10 Johns., 231; 17 Mich., 500.*

V. The Court erred in refusing to charge the jury that,

if this note was never delivered by the maker, or some person authorized by him, to any other person, but was fraudulenly or stealthily taken from the possession of the maker and in his absence by the payee, the note in the hands of the latter would be void.—*Story on Bills*, §§ *185, 187, 203; 1 Cow. T., 209; 4 Green. l, 28; 8 Vt., 94.*

VI. The Court erred in refusing to charge the jury as requested in the defendant's third request, without modification.

VII. The Court erred in refusing to charge the jury that such note in the hands of any other person deriving title from such payee would be void whether he gave value for it or not.—*3 Caines, 217; 9 Johns., 295; 12 Do., 306.*

VIII. The Court erred in refusing to charge the jury that, if they shall find that the note in question upon its face showed, at the time the plaintiff received it of Goldwood, or during the time Goldwood had the note, and plaintiff saw the same, that it was not properly executed and was invalid under the laws of the United States, for the want of a proper stamp, then the plaintiff cannot be considered as a "*bona fide*" *holder*, though he may have given value for the note.—*Int. R. L., June 30, '64, § 158; 3 Parsons on Cont., 313; Peak, 173; 4 B. & C., 235; 6 D. & R., 306; 3 Camp., 103.*

IX. The Court erred in refusing to charge the jury that if the note bears upon its face an illegal stamping by the payee therein named, and did so bear such illegal stamping at the time it was indorsed to and obtained by the plaintiff, this fact alone should have been sufficient to put the plaintiff on inquiry as to its validity when he obtained it, and if he failed to do this he cannot be deemed an innocent purchaser for value.—*Story on Notes*, § *197; 12 Johns., 310; 3 Kent Com., 103; 4 Mass., 370; 6 Pick., 258; 14 Pick., 268; 1 Doug., 413; 4 Hill, 442.*

*J. L. Hawes,* for defendant in error.

I.  No question of jurisdiction, or want of service of process, or of proof of service, was made before the Justice, and the defendant appeared without objection and filed his plea, notice and affidavit.  Proof of service was .thereby rendered unnecessary.  The appearance waived it.—*Malone v. Clark,* 2 *Hill, 657; Swartwout v. Roddie,* 5 *Hill, 118.*

II.  The objection to the reading of the note in evidence was equally frivolous.  It had been declared on before the Justice.  That note and the common counts constituted "the plaintiff's declaration."  There was no question as to the fact that the note was filed with the Justice, and the filing of the affidavit itself showed it.  But the affidavit filed was not such an one as the statute required to compel the plaintiff to prove the making of the note, and, consequently, left it admitted by the pleading.  It did not deny the execution of the note, but only denied its delivery.—*C. L.,* §§ *3714, 3767.*  But if it had not stood admitted on the record in Justice's Court, both the note and a copy being in the declaration in the Circuit Court, its *execution* was admitted, and did not require proof, because *such execution* was not denied by affidavit as required by Circuit rule 79.

That it was not properly stamped, and stamp canceled, was, also, no ground of objection, even if it had been true, to its admissibility in evidence.—*Halleck v. Jaudin, 34 Cal.; 3 Par. on Cont., 313; Tobey v. Chipman, 13 Allen, 123; McGovern v. Hasback, 53 Penn., 176.*

III.  The motion to strike out the testimony of witness Fletcher as to what Ellen Burson swore to before the Justice, was also properly granted.  The witness did not claim to be able to state only the substance of what Ellen testified to; but even if he had been able to state what she

swore to, the evidence was not competent as between these parties, for the reason, first, that the plaintiff was the *bona fide* holder of the note for value before maturity; and, second, the execution of the note being admitted by the pleading, the question of its delivery was no defense against it in the hands of a subsequent holder for value before maturity.—*Story on Promissory Notes,* § *191; 3 Kent Com. (11 Ed.), 97, 98.*

IV.  The remaining assignments of error relate to the refusal of the Court to charge the jury as requested by defendant's counsel, and to portions of the charge given. Two points were urged in the Court below, with considerable apparent earnestness.    One that the stamp on the note was not canceled with the initials of the maker, but of the indorser.  If there ever was any chance to question the validity of a note on that account, or that it cast any suspicion upon the paper, a recent decision of this Court would seem to set such doubts entirely at rest.

The other question, as to the delivery of the note, had been long since settled.  A partial or total want, or failure, or illegality of consideration, or even fraud or a *defect or infirmity of title,* in the person from whom he received it, is no defense to the title or bar to a recovery by a holder for value without notice before maturity.—*Story on Bills,* § *188; Bostwick v. Dodge, 1 Doug., 413; Outhwite v. Porter, 13 Mich., 533; Vinton v. Peck, 14 Mich., 287.*

A note is not void in the hands of an indorsee except in the instances where a statute makes it so; and if transferred before due to a *bona fide* holder, it cannot be shown that it has never been delivered.  By making the note, and leaving where it is liable to be stolen or otherwise fraudulently put in circulation, he has enabled the fraudulent holder to impose upon the public; and if an innocent person must suffer, it should be that one who, by his acts, has

enabled the third person to commit the fraud.— *Woodhull v. Holmes*, 10 Johns. R., 231; *Vallet v. Parker*, 6 Wend., 615; *Rockwell v. Charles*, 2 Hill, 499.

CHRISTIANCY, J.

The defendant below having appeared before the Justice and pleaded to the plaintiff's declaration, and twice obtained adjournments of this cause, it was too late, on the trial of the appeal in the circuit, to make any objection for want of proper service of the summons. After joining issue upon the merits, it was immaterial whether there had, in fact, ever been a summons issued.

There was no error, therefore, in overruling the defendant's objection to the introduction of evidence upon this ground.

The note declared upon was filed with the Justice at the time of declaring; and by the statute (*Comp. L.*, § 3767,) the plaintiff was therefore entitled to read the note in evidence without proving its execution, unless defendant denied its "execution on oath" at the time of pleading.

Defendant pleaded the general issue, with a notice that he would prove that the note was obtained from him by fraud and without consideration, and other facts substantially the same as set forth in his affidavit made and filed with the plea and notice. This affidavit simply denied the delivery of the note by the defendant, or any other person on his behalf, to the payee or any other person for him, or that defendant ever placed any stamp upon it or authorized any other person to do so, or to cancel such stamp, and stated that the paper was taken from deponent's house, in his absence from the same, by the payee, without the knowledge or consent of deponent.

It is unnecessary to determine here whether the execution of the note under this statute would include its deliv-

ery as a part of the execution; since, granting the affirmative, the *signature* certainly constitutes a part of its execution, and the affidavit being special,—not denying the execution generally, but merely the delivery and the affixing and canceling of the stamp,—admits, by a very clear implication, his signature to the instrument, and clearly indicates that he intends to contest only the delivery, the stamping and canceling of the stamp, and not his signature; otherwise, he would have denied the execution generally and brought himself within the language of the statute. The plaintiff, therefore, was not bound to prove such portion of the execution as was not denied, but admitted, viz: the signature of the defendant.

The case upon the trial stood in all respects as if the signature of the defendant had been admitted in open court. And this admission is to have at least as full effect as the clearest proof of such signature.

Now proof of such signature, together with the fact that the note is in the hands of, and produced by, the plaintiff (the indorsement being proved as it was here), furnishes strong presumptive evidence of delivery by the maker to the payee; and this is, in fact, all the proof ordinarily given by the plaintiff of such delivery when the execution of the note is denied. It establishes a *prima facie* case upon this point; and it is for the defendant, if he contests the fact of delivery, to sustain his denial by proof.

The indorsement by the payee having been proved, there was, therefore, no error in allowing the note to be read in evidence.

We think the Court erred in striking out the testimony of the witness, Fletcher, showing what the sister of the defendant testified to on the trial of this cause before the Justice, she having since died. The ground

upon which this was stricken out seems to have been, because the witness did not recollect the precise words of the former testimony, though he stated that he recollected and gave the substance. We think the objection, under such circumstances, untenable, and that the evidence was admissible. See *1 Greenl. Ev., Sec. 165, and authorities cited.* An additional ground of objection was stated, viz: that plaintiff was shown to be a *bona fide* holder of the note; but the Court could not have stricken out the evidence on this ground, as there was some evidence of circumstances tending to show he was not such *bona fide* holder, and the Court left this question to the jury.

But this note was indorsed by Goldwood, the payee, to the plaintiff, before maturity, for a valuable consideration, and, as plaintiff claims, in good faith and without notice of a want of delivery or of consideration, or any other circumstance tending to invalidate it in the hands of Goldwood; and his evidence tended to show this, though there was evidence of some circumstances tending to show that he had notice of the circumstances under which the paper had been obtained.

There was also evidence on the part of the defendant, strongly tending to show that the note never was delivered by the defendant, but that Goldwood, to whose order it was drawn, was endeavoring to sell to the defendant a patent right, or the right of certain territory under it, and that the parties had so far progressed towards the making of an arrangement to this end, that it was understood and verbally agreed that Goldwood was to give him a deed of certain territory, upon defendant's executing to him a note for the amount, with some other person signing it as surety. That the parties being in the defendant's house, and defendant's sister being present, Goldwood wrote this note, and defendant signed it; but as a surety was to be

obtained, he laid the note on the table and went out to find his uncle for that purpose, telling Goldwood, as he went out, not to touch it till he came back; but that while defendant was gone, Goldwood picked up the paper and started out doors with it; that defendant's sister then told him to let the note be on the table till defendant should come back, to which Goldwood replied he was going to have the note, and went off with it, without giving any deed of territory or anything else for it. That the note, at this time, was not stamped, and defendant never stamped or authorized it to be stamped; that some four days after, Goldwood wrote to defendant requesting him to come immediately to Kalamazoo "and sign stamp on the note," and saying if defendant was not there by Tuesday evening "I shall consider that you refuse your signature, and shall act accordingly." The evidence also tended to show that defendant called upon Goldwood about that time, while the latter had the note, and demanded it, accusing him of stealing it, to which Goldwood replied, "Never mind, we can fix that up," and said he was ready to do as he had agreed, and wanted defendant to get another signer, and he would give him a deed of territory; but defendant said he did not want the deed, but wanted the note. Goldwood refused to return the note, or to give a deed till he got another signer.

These facts, if found by the jury, would show, not only that, the note was never delivered to the payee, and that it therefore never had a legal existence as a note between the original parties, but that there was yet no completed or binding agreement of any kind, and was not to be until defendant should choose to get a surety on the note, and the payee should give him a deed of territory. Until thus completed, the defendant had a right to retract.

As a general rule, a negotiable promissory note, like any

other written contract, has no legal inception or valid existence, as such, until it has been delivered in accordance with the purpose and intent of the parties.—See *Edwards on B. and N.*, *175*, and authorities cited, and *1 Pars. on B. and N.*, *48 and 49*, and cases cited, and see *Thomas v. Watkins*, *16 Wis.*, *549 ; Mahon v. Sawyer*, *18 Ind.*, *73 ; Carter v. McClintock*, *29 Mo.*, *464.*

Delivery is an essential part of the making or execution of the note, and it takes effect only from delivery (for most purposes); and if this be subsequent to the date, it takes effect from the delivery and not from the date.— *1 Pars., ubi supra.* This is certainly true as between the original parties.

But negotiable paper differs from ordinary written contracts in this respect: that even a wrongful holder, between whom and the maker or indorser the note or indorsement would not be valid, may yet transfer to an innocent party, who takes it in good faith, without notice and for value, a good title as against the maker or indorser. And the question in the present case is, how far this principle will dispense with delivery by the maker.

When a note payable to bearer, which has once become operative by delivery, has been lost or stolen from the owner, and has subsequently come to the hands of a *bona fide* holder for value, the latter may recover against the maker, and all indorsers on the paper when in the hands of the loser; and the loser must sustain the loss. In such a case there was a complete legal instrument; the maker is clearly liable to pay it to some one; and the question is only to whom.

But in the case before us, where the note had never been delivered, and therefore had no legal inception or existence as a note, the question is whether he is liable to pay at all, even to an innocent holder for value.

The wrongful act of a thief or a trespasser may deprive the holder of his property in a note which has once become a note, or property, by delivery, and may transfer the title to an innocent purchaser for value. But a note in the hands of the maker before delivery is not property, nor the subject of ownership, as such; it is, in law, but a blank piece of paper. Can the *theft* or wrongful *seizure* of this paper *create a valid contract* on the part of the maker *against his will*, where *none* existed *before?* There is no principle of the law of contracts upon which this can be done, unless the facts of the case are such that, in justice and fairness, as between the maker and the innocent holder, the maker ought to be estopped to deny the making and delivery of the note.

But it is urged that this case falls within the general principle which has become a maxim of law, that when one of two innocent persons must suffer by the acts of a third, he who has enabled such third person to occasion the loss, must sustain it. This is a principle of manifest justice when confined within its proper limits. But the principle, as a rule, has many exceptions; and the point of difficulty in its application consists in determining what acts or conduct of the party sought to be charged, can properly be said to have "enabled the third person to occasion the loss," within the meaning of the rule. If I leave my horse in the stable, or in the pasture, I cannot properly be said to have enabled the *thief to* steal him, within the meaning of this rule, because he found it possible to steal him from that particular locality. And upon examination it will be found that this rule or maxim is mainly confined to cases where the party who is made to suffer the loss, has reposed a confidence in the third person whose acts have occasioned the loss, or in some other intermediate person whose acts or negligence have enabled

such third person to occasion the loss; and that the party has been held responsible for the acts of those in whom he had trusted upon grounds analogous to those which govern the relation of principal and agent; that the party thus reposing confidence in another with respect to transactions, by which the rights of others may be affected, has, as to the persons to be thus affected, constituted the third person his agent in some sense, and having held him out as such, or trusted him with papers or *indicia* of ownership which have enabled him to appear to others as principal, as owner, or as possessed of certain powers, the person reposing this confidence is, as to those who have been deceived into parting with property or incurring obligations on the faith of such appearances, to be held to the same extent as if the fact had accorded with such appearances.

Hence, to confine ourselves to the question of delivery, the authorities in reference to lost or stolen notes which have become operative by delivery, have no bearing upon the question. If the maker or indorser, before delivery to the payee, leave the note in the hands of a third person as an escrow, to be delivered upon certain conditions only, or voluntarily deliver it to the payee, or (if payable to bearer) to any other person for a special purpose only, as to be taken to, or discounted by a particular bank, or to be carried to any particular place or person, or to be used only in a certain way, or upon certain conditions not apparent upon the face of the paper, and the person to whom it is thus entrusted violate the confidence reposed in him, and put the note into circulation; this, though not a valid delivery as to the original parties, must, as between a *bona fide* holder for value, and the maker or indorser, be treated as a delivery, rendering the note or indorsement valid in

21 MICH.—C³.

the hands of such *bona fide* holder; or if the note be sent by mail, and get into the wrong hands; as the party intended to deliver to some one, and selects his own mode of delivery, he must be responsible for the result. These principles are too well settled to call for the citation of authorities, and manifestly it will make no difference in this respect, if the note or indorsement were signed in blank, if the maker or indorser part with the possession, or authorize a clerk or agent to do so, and it is done.—*1 Parsons on Bills and Notes, 109 to 114,* and cases cited, especially *Putnam v. Sullivan, 4 Mass., 45,* which was decided expressly upon the ground of the confidence reposed in the third person, as to the filling up, and in the clerks as to the delivery.

And when the maker or indorser has himself been deceived by the fraudulent acts or representations of the payee or others, and thereby induced to deliver or part with the note or indorsement, and the same is thus fraudulently obtained from him, he must, doubtless, as between him and an innocent holder for value, bear the consequences of his own credulity and want of caution. He has placed a confidence in another, and by putting the papers into his hands, has enabled him to appear as the owner, and to deceive others. Cases of this kind are numerous; but they have no bearing upon the wrongful taking from the maker, when he never voluntarily parted with the instrument. Much confusion, however, has arisen from the general language used in the books and sometimes by judges, in reference to cases where the maker has voluntarily parted with the possession, though induced to do so by fraud; when it is laid down as a general rule, that it is no defense for a maker, as against a *bona fide* holder, to show that the note was wrongfully or fraudulently obtained, without

attempting to distinguish between cases where the maker has actually and voluntarily parted with the possession of the note, and those where he has not.

We do not assert that the general rule we are discussing—that "where one of two innocent parties must suffer," etc.—must be confined exclusively to cases where a confidence has been placed in some other person (in reference to delivery) and abused. There may be cases where the culpable negligence or recklessness of the maker in allowing an undelivered note to get into circulation, might justly estop him from setting up non-delivery; as if he were knowingly to throw it into the street, or otherwise leave it accessible to the public, with no person present to guard against its abduction under circumstances when he might reasonably apprehend that it would be likely to be taken.

Upon this principle the case of *Ingham v. Primrose* (7 *C. B.* (*N. S.*), *82*) was decided, where the acceptor tore the bill into halves (with the intention of canceling it) and threw it into the street, and the drawer picked them up in his presence, and afterwards pasted the two pieces together and put them into circulation. See also by analogy *Foster v. Mackinnon, Law Rep., 4 Com. B., 704.*

But the case before us is one of a very different character. No actual delivery by the maker to any one for any purpose.

The evidence tends to show that when he left the room in his own house, the note being on the table, and his sister remaining there, he did not confide it to the custody of the payee, but told him not to take it, and no final agreement between them had yet been made, and no consideration given. Under such circumstances he can no more be said to have trusted it to the payee's custody or confidence, than that he trusted his spoons or other house-

hold goods to his custody or confidence; and there was no more apparent reason to suppose he would take and carry off the one, than the other.

The maker, therefore, cannot be held responsible for any negligence; there was nothing to prove negligence, unless he was bound to suspect, and treat as a knave, a thief or a criminal, the man who came to his house apparently on business, because he afterwards proved himself to be such. This, we think, would be preposterous.

We, therefore, see no ground upon which the defendant could be held liable on a note thus obtained, even to a *bona fide* holder for value. He was guilty of no more negligence than the plaintiff who took the paper, and the plaintiff shows no rights or equities superior to those of the defendant.

Such, we think, must be the result upon principle. We have carefully examined the cases, English and American, and are satisfied there is no adjudged case in the English courts, so far as their reports have reached us, which would warrant a recovery in the present case. Some *dicta* may be found, the general language of which might sustain the liability of the maker; such as that of Alderson Baron in *Marston v. Allen* (*8 M. & W., 494*), cited by Duer J., in *Gould v. Segee, 5 Duer, 260*, and that used by Williams, J., in *Ingham v. Primrose, 7 C. B. (N. S.), 82*. But a reference to the cases will show that no such question was involved, and that these remarks were wholly outside of the case.

On the other hand, *Hall v. Wilson, 16 Barb., 548, 555, and 556*, contains a *dictum* fully sustaining the views we have taken.

There are, however, two recent American cases, where the note or indorsement was obtained without delivery, under circumstances quite as wrongful as those in the pres-

ent case, in one of which the maker, and in the other the indorser, was held liable to a *bona fide* holder for value: *Shipley v. Carroll et al., 45 Ill., 285* (case of maker) and *Gould v. Segee, 5 Duer., 266.* But in neither of these cases can we discover that the Court discussed or considered the real principle involved; and we have been unable to discover anything in the cases cited by the Court to warrant the decision. It is possible that the case in Illinois may depend somewhat upon their statute, and the note being made as a mere matter of amusement, and the making not being justified by any legitimate pending business, the maker might perhaps justly be held responsible for a higher degree of diligence, and therefore more justly chargeable with negligence under the particular circumstances, than the maker in the present case.

There is another case (*Worcester Co. Bank v. Dorchester & Milton Bank, 10 Cush., 488*), where bank bills were stolen from the vault of the bank, which though signed and ready for use, had never been yet issued, and on which a *bona fide* holder for value was held entitled to recover. This, we are inclined to think, was correct. The Court intimated a doubt whether the same rule should apply to bank bills as to ordinary promissory notes, and as to the latter, failed to make any distinction between the question of delivery and questions affecting the rights of the parties upon notes which have become effectual by delivery. But we think bank bills which circulate universally as cash, passing from hand to hand perhaps a hundred times a day, without such inquiries as are usual in the cases of ordinary promissory notes of individuals, stand upon quite different grounds. And, considering the temptations to burglars and robbers, where large masses of bank bills are known to be kept, and the much greater facility of passing them off to innocent parties, without detection or identification of the

bills or the parties, and that the special business of banks is dealing in, and holding the custody of, money and bank bills; it is not unreasonable to hold them to a much higher degree of care, and to make them absolutely responsible for their safe keeping. We do not therefore regard this case as having any material bearing upon the case before us.

We think the Circuit Court erred in refusing to charge upon this point, as requested by the defendant below.

We do not think there was any error in refusing to charge that the want of a stamp on the note would be such circumstance of suspicion as to put the indorsee upon inquiry in taking the note. Under our decisions the note would be valid and could be enforced in our courts without a stamp.

Some other minor questions were raised, but we do not think they will be likely to arise upon a new trial.

The judgment must be reversed with costs, and a new trial awarded.

The other Justices concurred.