· SOLOMON P. CRESSINGER v. WILLIAM L. DESSENBURG, ISAAC MORSE ET AL.

*Delivery of Mortgage—Witnesses.*

A mortgage left with a third party to be delivered when a prior mortgage had been discharged and other conditions performed, was assigned by the mortgagee named in it, to the depositary, before they had been fulfilled. It was. afterward assigned to another party before it fell due, and the assignee sought to foreclose it. *Held* that there had been no delivery.

There is no injustice in declining ·to give controlling force to the testimony of a witness as against his positive assertions and acts to the contrary, whereby he claims to have deceived' another.

Appeal from Montcalm. Submitted January 16. Decided January 23.

FORECLOSURE. Bill dismissed. Complainant appeals.

*Vosper Brothers* for complainant. A deed left in the hands of a third party until a certain event has taken place, is a present grant unless it is expressed as an escrow, 3 Washb. R. P., 585; *Shirley v. Ayres,* 14 Ohio, 307; *Crompton v. Pratt,* 105 Mass., 255; *Jackson v. Catlin,* 2 Johns., 248; *Souverbye v. Arden,* 1 Johns. Ch., 240; *Hathaway v. Payne,* 34 N. Y., 92; *Hosley v. Holmes,* 27 Mich., 416; if the grantee assigns it before it is delivered to him he is estopped from disputing delivery, *Moore v. Metropolitan National Bank,* 55 N. Y., 44; *Dezell v. Odell,* 3 Hill, 215; a subsequent assignee in good faith is entitled to enforce his rights under the conveyance even if the depositary violated his trust, *Burson v. Huntington,* 21 Mich., 415.

*Mitchel & Pratt* and *Geo. P. Stone* for defendants. If a bargain is abandoned by the parties before the· performance of conditions precedent to the delivery of the papers ·left in charge of a third person, the papers become void, *Powell v. Conant,* 33 Mich., 396; *Dawson v. Hall,* 2 Mich., 390; Jones on Mortgages, §§ 616, 683.

COOLEY, J.   This is a bill to foreclose a mortgage given by defendant Dessenburg to Isaac Morse for the sum of $1,425, and bearing date November 17, 1877. The mortgage purports to be collateral to Dessenburg's notes of $50 and $1,375 respectively, the first of which was payable the first of January, and the second the first of May following.   The defense is that the mortgage was never delivered, and that the second note is a forgery, as is also the reference to notes in the mortgage.

It is conceded by all parties that at the date of the mortgage Morse owned the land which is described in it, and that he bargained to sell it to Dessenburg at the price of $1,425, of which $50 was to be paid on the first day of January following, and the remainder was to be secured by a mortgage on the land, and be payable four months later.   There was at the time an existing mortgage on the land for $750, but Dessenburg was not to take the land subject to this.   The parties, when they had agreed upon the terms of sale, went together to the place of business of John H. Cressinger, who they say they supposed had the prior mortgage, and there had the papers drawn by him.   According to the statements of Morse and Dessenburg the papers consisted of a deed from Morse to Dessenburg, a mortgage back for $1,425, and a note for $50 by Dessenburg to Morse. All these were put into an envelope, which was sealed up and left with Cressinger, and the package was to remain with him until Dessenburg had paid the $50, and until the parties should come together to take them away.   Cressinger, on the contrary, says that there was further executed by Dessenburg and left with the other papers a note of $1,375, and that the understanding was that as soon as the small note was paid, either party was to be at liberty to take away the papers which were executed to him.   Dessenburg sent money to Cressinger to pay the $50 note before it fell due.   In March following Cressinger got possession for collection of a demand against Morse for $330, and managed to get

from Morse an assignment to himself of the Dessenburg mortgage, in the arrangement of the claim. To bring this about he represented to Morse that Dessenburg had given no note for the $1,375 secured by the mortgage, and that consequently the demand might be garnished by Morse's creditors. To convince Morse of this, Cressinger says he manufactured a fictitious mortgage, which did not purport to secure a note, and exhibited it as the one executed by Dessenburg; while Morse insists that the one exhibited was the real mortgage. In order to make the assignment from Morse to Cressinger, the envelope was broken open, and the papers were then left with a third person. Meantime the prior mortgage had not been taken up, and if the one given by Dessenburg had become a valid security in Cressinger's hands, the land would be charged with the two mortgages, amounting to $2,125, and Dessenburg would be personally liable for $1,375. No one pretends that there was ever any understanding that Dessenburg should be placed in this predicament in making a purchase of land which he was to have a clear title of for $1,425. Both Dessenburg and Morse say that Cressinger gave them to understand he held the prior mortgage, and that it was to be taken up before the arrangement was completed; while Cressinger says it was owned in Detroit, and in the hands of agents at St. Johns, and all he was to do was to procure a discharge for the parties when they were ready to make payment. When Dessenburg found what had taken place between Morse and Cressinger, he refused to have anything further to do with the purchase, and it was agreed between him and Morse that the transaction should be considered at an end; Morse repaying the $50, and allowing Dessenburg to occupy the premises for a season. Cressinger subsequently procured a discharge of the prior mortgage, which he tendered to Dessenburg, who refused to receive it. The Dessenburg mortgage was then assigned to complainant and this suit instituted. The assignment to

complainant was made before the mortgage debt fell due.

The above are all the facts we think it important to notice here. On a review of all the proofs we are not satisfied that complainant has made out by a preponderance of evidence that the mortgage was ever delivered. If the understanding was as Morse and Dessenburg testify, there was certainly no delivery, and even on Cressinger's evidence it is inconceivable that Dessenburg understood his mortgage was to become an effective instrument before the prior mortgage was out of the way. The reasonable probabilities all favor the theory that Dessenburg's mortgage was not to be delivered to Morse until a discharge of the prior mortgage was obtained.

The question remains whether the $1,375 note is genuine. If it is, complainant may claim and does claim that Dessenburg under all the circumstances is estopped from disputing its delivery, as one who has purchased it in good faith before it fell due. *Burson v. Huntington*, 21 Mich., 415; *Comstock v. Smith*, 26 Mich., 307. But we are of opinion that the case is no more made out on this branch than on the other. There is no doubt whatever that Morse assigned the mortgage to Cressinger in the full belief that no note was given by Dessenburg except that of $50. If he had understood in the first place that one was to be given, the fault in not obtaining one must be attributable to Cressinger, who had been entrusted with drawing the papers, and some complaint on his part that Cressinger had blundered or had deceived him would naturally have been expected. But Cressinger does not pretend that any complaint was made or fault found, or that any dispute arose respecting the fact; and under all the circumstances it is quite as reasonable to believe that the original mortgage contained no reference to such a note, as that Cressinger manufactured a mortgage and exhibited it for the purposes of deception, and that it did deceive Morse in respect to so important a part of a transaction which had taken

place so recently. There is certainly no injustice to Cressinger in declining to give controlling force to his evidence that a note was originally given, as against his positive assertions and acts to the contrary whereby, as he says, he deceived Morse into assigning to him the mortgage.

The decree will be affirmed with costs.

The other Justices concurred.