# KENT COUNTY.

—————◆—————

## LORENZO D. MILLARD *vs.* JAMES W. BARTON.

Usually when the maker of a negotiable promissory note is not allowed to avail himself, as against third parties holding the note, of defences valid against the payee, it is because negligence is imputable to the maker in the inception of the note.

That a third party holds a negotiable note for a valuable consideration will not of itself, in an action against the maker, deprive such maker of defences valid against the payee.

Hence when A. made a negotiable promissory note to B. which was fraudulently procured by B., and no negligence was imputable to A., and suit was brought on the note against A. by C., a purchaser for valuable consideration, but it did not appear that C. bought the note in the usual course of business or for its full face value:

*Held*, that A. was entitled against C. to use the defences which he could have employed against B.

PLAINTIFF'S petition for a new trial.

This case was *assumpsit* upon a promissory note made by filling up in ink an ordinary lithographed blank form, as follows:

"$238.50.                                    WARWICK, R. I., *Oct.* 1, 1874.

"One year after date I promise to „pay to the order of C. B. Mahan, Agent, Two Hundred and Thirty-eight $\frac{50}{100}$ dollars at the Greenwich Nat'l Bank, at E. Greenwich, R. I. Value received.

"O. A. ¼ due Oct. 1, 1875.                      JAMES W. BARTON."

It was indorsed "Granite Agricultural Works, C. B. Mahan, Agent."

After verdict for the defendant in this court the plaintiff filed his petition for a new trial, claiming that improper evidence was allowed to go to the jury against his objection, and that the verdict was against the evidence adduced.

The opinion of the court recites so much of the evidence and facts as is needed to make the reasons of decision clear.

The agreement spoken of in the opinion is as follows:

"Office of the Granite Agricultural Works, Proprietors of the Granite Mower and Reaper, manufacturers and dealers in Agricultural Implements, Iron and Wood Working Machinery.

"LEBANON, N. H., *Oct.* 30, 1874.

"James W. Barton, of Warwick, R. I.,
                    Bought of Granite Agricultural Works,

| | |
|---|---|
| 2 No. 2 Granite Mowers, 4 feet, 6 in. 75 . . . . . | $150.00 |
| 1 No. 3         do.         one horse, 3 feet 6 in. cut . . | 65.00 |
| 2 No. 1 Cylinder Side Hill Plows, 11.75 . . . . . . | 23.50 |
| | $238.50 |

"Leave him the towns of Warwick and East Greenwich.

"Received payment by note due Oct. 1, 1875, at the Greenwich Nat'l Bank, at East Greenwich, R. I.

"We hereby agree with the said Barton that if he should not be able to sell all the above goods before July 20, 1875, and shall notify us of such fact by mail, or otherwise, at that time, we will then send a general agent to assist him in the sale of the same; if then neither our agent nor the said Barton can succeed in selling all the above goods before August 1, 1875, then we will take them off his hands, and pay him the same prices at which they are now billed to him, with all money paid out for railroad freight

charges on same from our factory.   We hereby reserve the right
to send an agent to assist the said Barton at any time when we
deem it necessary, in order to secure the sale of the said goods,
and will account to the said Barton for all goods so disposed of
by us.   It is also further agreed that if the said Barton shall suc-
ceed in selling all the said goods, either alone or with our aid,
before August 15, 1875, then the said Barton shall pay his obli-
gation given this day for the same in good faith, and the same as
if this agreement had not been given at all.

" The above goods shall be well housed and properly cared for
at all times.

"All the above goods are warranted from flaws or other defects
in manufacturing.

" Granite Agricultural Works,
" C. B. MAHAN, *Agent*.

" I hereby accept the terms of the above agreement, and will
accept the goods named above in good faith, and do the best I
can, soon as sent, to sell the same and pay for them as above
specified.                                  JAMES W. BARTON."

*Nicholas Van Slyck & Henry J. Dubois*, for plaintiff, cited *Smith*
v. *Livingstone*, 111 Mass. 342; *Goodman* v. *Simonds*, 20 How.
U. S. 343; *Wheeler* v. *Guild*, 20 Pick. 545, and the cases cited
by Shaw, C. J., in his opinion; *Clark* v. *Pease*, 41 N. H. 414;
*Douglass* v. *Matting*, 29 Iowa, 498.

*Ziba O. Slocum*, for defendant.

I. When one without negligence on his part is, by trick or
artifice, induced to sign a different instrument from that to which
he intended to give his signature, such instrument is void, even
in the hands of a *bonâ fide* indorsee for value. . Bigelow on Bills
and Notes, 582; Bigelow on Fraud, 75, note 2; *Munson* v. *Nich-
ols*, 62 Ill. 111; *Taylor* v. *Atchison*, 54 Ill. 196; *Gibbs* v. *Lina-
bury*, 22 Mich. 479; *Walker* v. *Ebert*, 29 Wis. 194; *Briggs* v.
*Ewart*, 51 Mo. 245; *Griffiths* v. *Kellogg*, 39 Wis. 290; *Cline* v.
*Guthrie*, 42 Ind. 227; *Abbott* v. *Rose*, 62 Me. 194; *Brown* v. *Reed*,
79 Pa. St. 370; *Whitney* v. *Snyder*, 2 Lans. 477; *Foster* v. *Mac-
kinnon*, L. R. 4 C. P. 704; *Sims* v. *Bice*, 67 Ill. 88.

II. The question of the defendant's negligence was a question

for the jury, under proper instruction from the court. There being no exception taken to the charge, it is to be presumed that the court properly instructed the jury on this point, and the jury having found there was no negligence, the court will not disturb the verdict. *Brown* v. *Reed*, 79 Pa. St. 370; *Abbott* v. *Rose*, 62 Me. 194.

*Providence, February* 11, 1882. POTTER J. This is an action of *assumpsit* on a promissory note, dated October 1, 1874, and payable one year after date. The note was given to C. B. Mahan, and is sued by Millard, the indorsee, against Barton, the maker. Plea the general issue.

The defendant testified that he never gave the note sued. He was a farmer. He said : " Mahan, the payee, came to me October, 1874, while I was at work with my team, said he was agent for the Granite Agricultural Works, and wanted me to sell agricultural tools for them on certain terms he proposed. If not sold by August, 1875, he was to take them back. While I was reading an agreement which he handed me, he wrote a note and handed it to me to sign. I told him that meant money, and was not conditioned by the agreement, and I should not sign it. I was going off. He said he must have something to show for the goods sent. I told him if he would write a condition in the note I would sign it. At his request I wrote a condition that the note was not to be paid until the agreement was fulfilled. He said there was not room to put it in that note. He opened a portfolio and wrote a promissory note and also the condition. I took a pencil and wrote my name below the condition. The condition followed the note. I read the note before I signed it. I then signed the agreement. He wrote the note on a plain piece of paper, a new sheet of paper unfolded."

Another witness testified that he was present. That Mahan filled out a printed note which the defendant refused to sign. The second note was all written. Saw the defendant read it before he signed it.

The accompanying agreement which the defendant signed proves to be a sort of bill of sale of mowing machines, &c., acknowledging receipt of payment by a note with a provision that the Granite Agricultural Works were to take back all not sold by August 15,

1875, and pay him the same prices at which they are now billed to him, and that if the defendant did succeed in selling them he was to pay the note.

The plaintiff, the holder, produced the note, and it being admitted that he was a *bonâ fide* holder and had taken it for valuable consideration, and had purchased it in the usual course of trade before it was due and without notice of any equities, he objected to the admission of any evidence by the defendant tending to show the equities as between the original parties. The evidence was nevertheless admitted, and the plaintiff excepted.

The first question is, was the evidence properly admitted? Had the defendant, the maker, a right to show in his defence that the note was obtained from him by fraud, or that it was a forgery, and that therefore the indorsee could not recover against him?

While between the original parties the ordinary rules of contract apply, there are many cases where the maker of a note who has a good defence against the payee has none against an honest indorsee, and this brings us to the inquiry whether the present is such a case? And it will be found, we think, that the greater part of the cases where the maker has been held liable to third parties are cases where there has been more or less negligence on his part.

There is a large class of cases where the maker reposes confidence in one who abuses it; notes given to a person to be used in some particular mode or event, and he applies them to his own use; *e. g.* a note given to a person to renew an accommodation note, and he uses it to procure a new loan for himself; *Small* v. *Smith*, 1 Denio, 583; *Bank of Missouri* v. *Phillips*, 17 Mo. 29; *McDonald* v. *The Muscatine National Bank*, 27 Iowa, 319; *Hall* v. *Hale*, 8 Conn. 336. So where a note is voluntarily made and delivered but it is obtained by fraudulent representations. In this case the maker puts his name to the note intending to become a party to it and to be bound by it. In the much quoted case of *Swift* v. *Tyson*, 16 Pet. 1, where the holder recovered, the note was given for purchase of land, and it afterwards proved that the representations of the vendor as to the title and value were fraudulent.

So in the case of *Douglass* v. *Matting*, 29 Iowa, 498, the de-

fendant signed voluntarily, but without reading, a note represented to him to be a different contract. It was held that he was guilty of culpable negligence, and liable. So in *Chapman* v. *Rose*, 56 N. Y. 137, a person signed without reading a note represented to be a duplicate of an order he had signed. Held, that if by his carelessness or undue confidence he had misled others, he was liable.

Another class is of cases where the maker has purposely left blanks for another to fill, or where he has carelessly left spaces which enabled some holder to fill them in such a way as to impose on third parties. *Young* v. *Grote*, 4 Bing. 253, was where a man left blank checks with his wife, and she filled them in such a way that a clerk was enabled to alter them without exciting suspicion. In *Holmes* v. *Trumper*, 22 Mich. 427, the Supreme Court of Michigan express their opinion that courts have gone as far as they ought to go in sustaining such instruments.

So as to instruments so drawn as to be easily convertible into notes. *Brown* v. *Reed*, 79 Pa. St. 370. And so where a memorandum or condition is attached to the note in such a manner that it can easily be separated without exciting suspicion in the taker.

In most of the cases where the maker has been held liable to third parties, he has voluntarily signed the note and parted with the possession of it. See *Burson* v. *Huntington*, 21 Mich. 415; *Baxendale* v. *Bennett*, L. R. 3 Q. B. Div. 525; *Nance* v. *Lary*, 5 Ala. 370. Bigelow on Bills and Notes, 582, after stating the cases, including most of these we have cited, gives this as the result of the authorities : " Where the evidence shows that *without negligence* on the part of the defendant he was imposed upon by the fraudulent representations, tricks, or artifice of another party to the paper, as to the nature of the contract he was signing, and the defendant signed the contract innocently, without knowing that it was a bill, note, or check, and under the belief thus caused that it was another sort of instrument, there can be no recovery against him *by any person*. If, however, the defendant were guilty of negligence in not ascertaining the nature of the engagement to which he was giving his signature, he will be liable to any holder, into whose hands the paper may pass for value and with-

out notice of the facts, and to any one claiming under such a holder, though himself not a *bonâ fide* holder for value."

This seems to place the right to recover on the ground of the negligence of the defendant, and to be a fair statement of the result of. the decisions.

Judges in their opinions in these cases have used very broad language. Some have said that the person who takes a note before it is due, for value and in good faith, is not affected at all by any equities between the original parties. It requires but little acquaintance with the authorities to know that this is not correct. Others have laid down generally that neither duress nor fraud can affect a *bonâ fide* purchaser for value. We have seen that if the maker confides in, and acts upon, fraudulent representations, he · will in many cases be held liable. But Bigelow, who has collected all the prominent authorities, says that it is equally clear, on principle and authority, that fraud may be of such a character as to make the note void in all hands. Bigelow on Bills and Notes, 539. So as to duress, a case generally cited is *Clark* v. *Pease*, 41 N. H. 414, where a person arrested for malicious mischief gave a note to settle it. But he gave it voluntarily. But to hold that a note would be valid, without any reference to the degree of force or violence used, is to go farther than any decision has yet gone in any case where the point was necessarily involved.

One prominent text book on promissory notes lays down the rule that a note, although obtained by theft or robbery, is nevertheless good in the hands of a *bonâ fide* holder; and to sustain the text as to *robbery*, cites *Miller* v. *Race*, 1 Burr. 452, which was a case of a stolen bank bill; *Grant* v. *Vaughan*, 3 Burr. 1516, which was a case of a lost check on a banker payable to bearer; *Peacock* v. *Rhodes*, 2 Doug. 633, which was a case of a bill indorsed in blank and stolen; *Lowndes* v. *Anderson*, 13 East, 130, a case of bank bills, but not of either theft or robbery; *Thurston* v. *M'Kown*, 6 Mass. 428, where there was neither theft nor robbery, but the maker voluntarily made one note, and afterwards made another intended to be substituted for the first. He delivered both notes to a person who used them both, when the maker intended that only one should be used. *Wheeler* v. *Guild*, 20 Pick. 545, where the court in their opinion do indeed speak of

lost and stolen notes, but the note in question had been paid to one person when it belonged to another.

We have alluded to these decisions for the purpose of showing, that while in cases where there is negligence the doctrine is well settled ; in other cases there is a good deal of confusion, and even contradiction, in the decided cases, and that the very positive rules undertaken to be laid down by text books and some courts are not supported by any great weight of authority.

In some cases the right to recover, where the makerhas been negligent, has been put upon the ground of estoppel. *Swan* v. *The North British Australasian Company*, 2 H. & C. 175 ; *Freeman* v. *Cooke*, 2 Exch. Rep. 654. In *Halifax Union* v. *Wheelwright*, L. R. 10 Exch. 183, 192, it is suggested that it may be supported on the ground of avoiding circuity of action ; as, if the holder had honestly lost his money by the maker's carelessness, he might in many cases have an action against the maker for the damages growing out of his carelessness. *Swan* v. *The North British Australasian Company*, 2 H. & C. 175, 190.

In many of the cases involving questions of this sort the parties have argued on the principle, so often referred to as almost to have become a maxim, that when one of two innocent persons must suffer, he should suffer who, by his negligence, has put it in the power of a rogue to impose on the other. See comments on this in *Burson* v. *Huntington*, 21 Mich. 415, and *Holmes* v. *Trumper*, 22 Mich. 427.

It is obvious that before this principle can apply there must be negligence on the part of the maker. · This would include cases where he had imprudently reposed confidence, where he had been induced to make and deliver a note by deceit, many cases of lost notes, and perhaps some cases where a note had been stolen.

It may be well to consider in this connection some of the cases as to how much caution or good faith is required. on the part of the holder.

While there has been a greal deal of inconsistency upon the point of how much negligence, on the part of the buyer of a note, is consistent with his right to recover, the cases which are strongest in favor of the plaintiff require something on his part.

In *Goodman* v. *Harvey*, 4 A. & E. 870, it was held that even

gross negligence on the part of the holder would not invalidate his title, except so far as it might be evidence of bad faith.   And see *Jones* v. *Gordon*, L. R. 2 App. Cas. 616, 628.   Honest carelessness is very different from refraining to inquire because the taker has a suspicion that there is something wrong.

In *Goodman* v. *Simonds*, 20 How. U. S. 343, 365, 366, the court, while holding the same doctrine as laid down in the English case, go on to say that the question of whether the holder had notice or knowledge, which is the same thing, is a question of fact for the jury.   " Every one must conduct himself honestly in respect to antecedent parties, when he takes negotiable paper in order to acquire a title which will shield him against prior equities ; while he is not obliged to make inquiries, he must not wilfully shut his eyes to the means of knowledge which he knows are at hand, as was plainly intimated by Baron Parke, in *May* v. *Chapman*, 16 M. & W. 355; for the reason that such conduct, whether equivalent to notice or not, would be plenary evidence of bad faith.   Mere want of care and caution is not enough."

In *Bailey* v. *Bidwell*, 13 M. & W. 73, 76, A. D. 1844, Baron Parke says it has certainly been since the late cases the universal understanding, that if the note was proved to have been obtained by fraud, or affected by illegality, that afforded a presumption that the person who had been guilty of the illegality would dispose of it and would place it in the hands of another person to sue upon it, and such proof casts upon the holder the burden of proving that he is a *bonâ fide* holder for value.

In *May* v. *Chapman*, 16 M. & W. 355, 361, Baron Parke said notice and knowledge mean not only express notice, but knowledge or means of knowledge to which the party wilfully shuts his eyes.

Many cases have held that the fact that the note is or is not taken in the usual course of business is important.   As to the meaning of this see *Roberts* v. *Hall*, 37 Conn. 205, 211.

For a full history of the decisions on these points see Judge Clifford's opinion, in *Goodman* v. *Simonds*, 20 How. U. S. 343, and the argument of counsel, p. 345 ; Bigelow on Bills and Notes, 440, 441 ; 1 Smith Lead. Cas. *607, and criticisms on the cases in

the Central Law Journal, vol. 2, p. 425; vol. 3, pp. 6, 213; vol. 7, pp. 238, 348. See, also, Story on Promissory Notes, § 196 and notes.

As the law now stands, the holder of negotiable paper takes it at his own risk as far as its validity may be affected by the incapacity of the party, as the law makes all contracts void for usury, forgery, &c.

We think the plaintiff was not entitled to protection as a *bonâ fide* holder in the present case.

It will be seen that the admission here is, not that the plaintiff gave full value, but that he was a holder for a valuable consideration. The latter might be enough in some cases, but in a case like this where the defence is fraud, alteration, or forgery, the fact that the plaintiff purchased the note for a sum much below its face, even if he did not know of any equities between the original parties, might be a circumstance tending to show that he wilfully shut his eyes to the means of knowing the facts.

In the case before us if the cheat was practised by superposition, then it was at least a fraud, and a question of negligence might arise. The defendant testifies that he signed a note not negotiable and read it before signing, and the jury must have been satisfied there was no blamable negligence. If the ink was erased by any chemical process and a negotiable note substituted over his name, then it was a forgery, and no question of negligence could arise.

The defendant testifies that he read it, having refused to sign the one first presented to him. In this he is confirmed by another person present, and the payee was not produced to contradict his statement, as he might have been if it was not true.

In the order of trial the plaintiff first produces his note, and, the signature not being denied, may rest his case. If the signature is his, it is *primâ facie* evidence that the whole instrument is genuine.

Then the defendant may put in evidence to prove fraud, &c., in the inception of the note. The plaintiff, in all those cases where the note would be valid in the hands of a holder for value, must then show that he is such and that he took it in good faith. And he may be required to show the circumstances under which he took the note, as bearing upon this point. So laid down in *Wyer*

v. *Dorchester & Milton Bank*, 11 Cush. 51, although not neces-
sary to the decision there ; and see Bigelow on Bills and Notes,
540, 580.   If proved to be a forgery, it would not matter how he
obtained it.

We think the evidence was properly admitted.   The jury must
have been satisfied that it was a fraud, without negligence on the
part of the defendant, or a forgery, and we do not think the ver-
dict is against the evidence.                    *Petition dismissed.*